(No. 20419.—

The National City Bank of Ottawa, Defendant in Error, *vs.* Fred P. Cowdin *et al.* Plaintiffs in Error.

*Opinion filed February 18, 1931—Rehearing denied April 10, 1931.*

Doyle, Sampson & Giffin, (C. Terry Lindner, and A. F. Newkirk, of counsel,) for plaintiffs in error.

Masters & Masters, and Walter T. Day, for defendant in error.

Mr. Justice Heard delivered the opinion of the court:

This cause is here on *certiorari* to review a judgment of the Appellate Court for the Third District affirming a decree of the circuit court of Sangamon county setting aside as fraudulent a conveyance of certain real estate made May 20, 1926, by plaintiff in error Fred P. Cowdin to his wife and ordering the premises sold under an execution issued upon a judgment of the circuit court of Sangamon county in favor of defendant in error, the National City Bank of Ottawa, Illinois, against Fred P. Cowdin.

In 1923 plaintiff in error Fred P. Cowdin, a practicing physician in Springfield, purchased the premises involved in this suit, a vacant lot, for the price of $3500, which was paid by him in monthly installments and title taken in his name. Thereafter a residence costing about $30,000 erected thereon was completed and occupied by him and his wife in July, 1926. On May 20, 1926, the property was conveyed by Cowdin to his wife, Margaret B., in accordance with an arrangement made between them at the time of the purchase of the lot. The deed was filed for record on the same day in the recorder's office of Sangamon county. For a number of years, commencing before the conveyance here involved, Cowdin was interested as a stockholder in a corporation known as the American Magnestone Corporation. That corporation was engaged in the business of manufacturing stuccoes and other building materials and had its principal place of business first in Springfield and later in Ottawa. Its capital stock consisted of 3000 shares of the par value of $100 per share, of which at the time of the conveyance Cowdin owned 428 shares, for some of which he had paid $80 and for the remainder $100 per share. He was also a director in the corporation but did not actively participate in its financial management, his time being almost entirely devoted to the practice of his profession. The president and general manager of the corporation was George B. Smith. The Magnestone Corporation owned a factory at Ottawa worth $125,000 and it had various other valuable assets. In the course of the business dealings of the Magnestone Corporation in and about Ottawa, Smith arranged for a line of credit with defendant in error. In February, 1927, Smith reported to the directors of the Magnestone Corporation that it had overdrawn its account with defendant in error and he requested that the directors should give their individual notes to cover such overdraft. Pursuant to this request Cowdin gave his first note in the latter part of February, 1927, in the sum of $2000, payable to the American

Magnestone Corporation, and the same was thereafter, on March 2, 1927, discounted by defendant in error in the sum of $1925. Later a further overdraft was reported, and in order to help cover the same a like note in the sum of $2100 was given by Cowdin, likewise at the request of Smith. July 19, 1927, these two notes were taken up by Cowdin and in lieu thereof he gave a new judgment note in the sum of $4025, that being the note involved herein, by virtue of which defendant in error brought this bill as a judgment creditor of Cowdin. The record does not show when the corporation began to overdraw its account with the bank. On December 19, 1927, defendant in error obtained judgment on the Cowdin note given July 19, 1927, in the sum of $4025, and upon that judgment execution was thereafter issued and returned unsatisfied. On December 23, 1927, defendant in error filed its bill to set aside the aforesaid conveyance as in fraud of its rights as a subsequent creditor of Cowdin. Separate answers were filed by Cowdin and his wife denying all of the charges, and the cause was referred to the master in chancery to take and report the evidence, together with his conclusions thereon. After such hearing the master reported that the equities were with the defendants and recommended that the bill be dismissed. Exceptions to the report were sustained by the trial court, and a decree holding that the equities were with the complainant and directing the sheriff to levy upon the premises to satisfy complainant's judgment was entered.

It is contended by defendant in error that at the time of the conveyance to his wife Cowdin was insolvent and that the conveyance was voluntary, without consideration, made for the purpose of hindering, delaying and defrauding existing and subsequent creditors, including defendant in error, and to prevent all persons to whom Cowdin might become indebted, including defendant in error, from obtaining satisfaction of their legal demands. While the evidence shows that at the time of the conveyance Cowdin had

considerable indebtedness, largely contingent as surety for others, and the court found that at that time he had no assets sufficient in value to discharge or satisfy his debts or liabilities, yet the evidence fails to support the court's finding in that respect, and it was only arrived at by charging plaintiffs in error in full for all direct and contingent liabilities, a very large portion of which was more than covered by first-class collateral security, and as to other portions, on which he had a contingent liability as surety, the principal and other sureties were financially sound. These liabilities were charged in full to Cowdin's account, and he was given no credit for his right of contribution against the other solvent sureties in the event that he was called upon to pay in full and no credit for his recourse against the solvent principal in the contingency that he was called upon to pay the indebtedness. In one instance the collateral was sold and brought twenty per cent more than the indebtedness for which it was pledged. Even using this unsound basis of calculation, Cowdin's insolvency could only be arrived at by considering his 428 shares of Magnestone stock to be valueless, the only basis for which was a general statement with reference thereto made by Smith, defendant in error's main witness, and the fact that an application for a receiver for the company was made in the fall of 1927. In these times the fact that an application for a receiver for a manufacturing concern is made is very little evidence as to the value of its stock sixteen months prior thereto, and Smith's statement is entirely minimized by his official statements, made as president of the company and taken from its records, to his stockholders and the banks with which the company was doing business, one of which, dated April 18, 1925, showed that each of the 2485 shares of stock then outstanding had an actual value of $128.02, and the other of which, made July 31, 1926, a little over a month after the conveyance, showed that each of the 2359 shares of stock then outstanding had an actual value of $110.77.

At the time of the conveyance on May 20, 1926, the evidence shows that Cowdin was not in any way indebted to defendant in error and that he had no personal business relations with it until a much later period, and it does not show that at the time of the making of the deed he had any intention of ever becoming indebted to it. Mrs. Cowdin had had no dealings with it or any of its officers and had no knowledge of its existence. It is not claimed that either Cowdin or his wife at any time received any consideration for the giving of these notes or either of them. The first two notes were not payable to defendant in error but to the company and were given entirely at the request of Smith, the president of the Magnestone Corporation, to cover overdrafts which then existed on account of the dealings between Smith and the bank. Up to the time the last of the notes was given Cowdin had not had any dealings with the bank and he did not then know any of its officers. The notes were accommodation notes given after the execution and recording of the conveyance here involved.

No presumption of an intent to defraud subsequent creditors arises from the mere fact that a husband engaged in business enterprises makes a conveyance to his wife. In *Moritz* v. *Hoffman,* 35 Ill. 553, this court, in affirming a decree for the defendant upon a bill by a subsequent creditor to set aside a voluntary conveyance made by a husband to his wife, said: "We see in this case no fact justifying the inference that this provision was made by F. A. Hoffman for his wife with a view to his becoming indebted, no further than the act of any person in extensive business, whose balances are daily changing sides on his ledger, is subject to such an inference. If this was not so no man in active business could safely transfer property for the praiseworthy object of providing a home for his wife or child. Such are the fluctuations in the financial and commercial world—and they will always occur with such a people as ours—the credit side of an honest man's ledger may show to-day thousands

in his favor and the next day the sad intelligence may come to him over the wires that the failure of a trusted correspondent with whom he had large deposits has beggared him. While his ledger told him a tale so pleasing, while he was buoyant on the wave of prosperity, he secures a home for his wife or for his child by conveying to a trustee for their use a portion of his estate, voluntarily and with no other consideration except love and affection. No case can be found in the books where such a settlement, under such circumstances, though the grantor afterwards became indebted, has been impeached and set aside." In *Mixell* v. *Lutz,* 34 Ill. 382, it is said: "If the conveyance was made before the indebtedness was incurred then there was no fraud, as there was no design to hinder or delay creditors at the time, and the credit was not given upon the supposition that this property could be rendered liable for its payment. * * * Persons afterwards giving credit have no right to complain, as they did not look to the property as security for their debts."

This case differs from cases cited by defendant in error in that Cowdin did not seek to obtain credit from defendant in error by fraudulent representations as to his property which had been theretofore secretly conveyed to a relative and the deed not recorded. Cowdin made no representations to defendant in error as to his property to obtain credit from it. Defendant in error, with at least constructive notice of the conveyance from the recording of the deed, voluntarily, without his knowledge in the first instance, became his creditor by discounting his note given to the Magnestone Corporation. It did not rely on the property as a basis for credit. Mrs. Cowdin was then occupying the premises as a home for herself, husband and child and exercised dominion over the same by keeping a boarding and rooming house therein. With reference thereto she testified: "I consider myself to be the absolute owner of the property in question and I have exercised acts of own-

ership and control over the property since May 20, 1926. I have been in control of it since that time. During that time my husband has not exercised any acts of control or ownership over that property nor has he attempted to do so. During that time I have kept as many boarders in that home as I possibly could, and I have determined whether such roomers should be in the house and I have collected the income therefrom and have had the disposition of such income."

In *German-American Bank* v. *Martin,* 277 Ill. 629, which was an appeal from a decree of the circuit court of Logan county setting aside, as against judgment creditors, voluntary deeds made by Martin to his children and their descendants, this court in reversing the decree said: "Whether these deeds were void as to subsequent creditors depends wholly upon whether such subsequent creditors had actual or constructive notice of their execution or delivery. Section 30 of the Conveyance act provides that all deeds, mortgages and other instruments of writing which are authorized to be recorded shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers without notice, and that all such deeds shall be adjudged void as to all such creditors and subsequent purchasers without notice until the same shall be filed for record. This statute places creditors on the same footing as subsequent purchasers."

The decree of the circuit court was contrary to the evidence and the law applicable thereto, and such decree, and the judgment of the Appellate Court affirming it, are therefore reversed and the cause remanded to the circuit court of Sangamon county, with instructions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*