Julian Scheske, Plaintiff-Appellee, v. August F. Wiechert, Defendant-Appellant.

Term No. 54–F–2.

Opinion filed May 10, 1954. Released for publication June 3, 1954.

ROLAND H. WIECHERT, of East St. Louis, for appellant.

.TURNER, HOLDER & ACKERMANN, of Belleville, for appellee.

MR. JUSTICE BARDENS delivered the opinion of the court.

Plaintiff filed suit against defendant in the circuit court of St. Clair county, alleging that he was entitled to a commission on the sale of defendant's hardware business in the city of Belleville, Illinois. This appeal follows a jury verdict and judgment for plaintiff and

the denial of defendant's motions for judgment n. o. v. and for a new trial. Since among the errors urged is the contention that the verdict is against the manifest weight of the evidence, it will be necessary to detail material portions of the evidence.

Plaintiff, a licensed real estate broker, testified that he received an inquiry from a prospective purchaser interested in acquiring a hardware business; that he thereupon contacted defendant at his place of business and ascertained that the stock in trade was for sale, that defendant would pay a 5% commission on the sale price; that a lease of the store premises owned by defendant would be arranged; that he communicated this information to the purchaser and on another occasion discussed the details of the proposition with one of the buyers but was informed that they would contact defendant directly since they were acquainted with him; and that he subsequently learned the sale had been made and requested payment of his commission, which was refused by defendant. Suit was thereupon filed for a commission on the sale of the inventory and a commission on the five-year lease obtained by the purchaser. The buyers testified that they first heard of defendant's store being for sale through plaintiff, and that they told defendant of such fact. Another real estate broker testified that the usual commission on such transaction was 5% of total sales price of the inventory and 3% of the rentals for negotiating the five-year lease.

Defendant testified that he declined to list his property with plaintiff and made no agreement to pay a commission on the sale of his business; that he told plaintiff he would sell anything he had if he could make a profit but that he would not list it or pay any commission to sell it; that he did not recall whether he told plaintiff he would sell the store at the inventory value, or that the inventory would run between $22,000 and

$28,000; that there was no discussion of the lease at all with plaintiff; and that the buyers told him they had learned of defendant's business being for sale through plaintiff. Defendant further testified that he and his wife owned the land and buildings jointly but that the hardware business was owned by himself and another in partnership.

It is apparent from the amount of their verdict that the jury resolved the conflicting testimony concerning the arrangement for sale of the inventory in plaintiff's favor, and the evidence on the leasehold in defendant's favor. With the parties diametrically opposed in their respective versions of the incident, the verdict of the jury thus becomes conclusive unless it is contrary to the greater weight of the evidence. Our courts have consistently held that where a jury has weighed conflicting evidence and by their verdict indicated on which side the evidence preponderates, such verdict cannot be disturbed unless manifestly against the greater weight of the evidence. *Voellinger v. Kohl,* 261 Ill. App. 271, 274; *Frankenstein & Co. v. Adams & Austin Bldg. Corp.,* 325 Ill. App. 574. Here, it cannot be said that such is the case. While the transaction was culminated without the plaintiff's participation, all the witnesses agreed that the buyers and the defendant were originally brought together through the efforts of plaintiff. This, added to the fact that there is evidence in the record of an oral contract, disputed though it is, is sufficient to support the jury's verdict. Defendant cites the case of *West End Dry Goods Store v. Maun,* 133 Ill. App. 544, in which the evidence of a broker's employment by the seller was disputed. In reversing a judgment for the broker, the Appellate Court said:

"In this irreconcilable conflict in the evidence, it may be said that the question of veracity between the disputants was for the jury to settle by their verdict, and

did the proof here end we might be willing so to concede, and conceding, be content to be concluded by the jury's verdict. But there are other uncontradicted evidence, facts and circumstances in proof which contribute sustaining force to Samuel's evidence."

Defendant then argues the existence of such uncontradicted evidence in this case. One such fact is that the alleged contract of employment was oral, whereas, evidence offered, though ruled inadmissible by the court, would have established that the ethics of the National Association of Real Estate Boards stated that all such contracts should be in writing. Such rule, of course, merely states a desirable practice for its members to follow and could not be material to or conclusive of the issues here. Had the evidence shown that plaintiff customarily observed such rule of practice, then his failure to put the alleged contract of employment in writing in this instance might be considered by the jury along with the other circumstantial evidence. But in the absence of such proof the court's exclusion of the Real Estate Board rule was proper.

██ ██ Nor was the plaintiff's admittedly inactive role in concluding the transaction such a fact as would render the jury's finding of a contract of employment unreasonable. Whether the services of the broker were the procuring cause of the sale is clearly a question of fact for the jury. *Martin v. Equitable Life Assur. Soc. of U. S.,* 323 Ill. App. 69, 54 N.E.2d 899; *Wood v. Brown,* 330 Ill. App. 618, 71 N.E.2d 841. The completion of the sale without the help of plaintiff would merely constitute a circumstance peculiarly within the province of the jury to weigh, together with other evidence, in resolving the issue of plaintiff's alleged employment by defendant. While perhaps it does support defendant's version of the case, it is not a fact of such quality as would make the verdict for the plaintiff un-

reasonable, as was the breakdown and abandonment of negotiations started by the broker in the *West End Dry Goods Store* case, *supra,* cited by defendant. We therefore conclude that the jury's verdict was not against the manifest weight of the evidence.

 Defendant likewise urges several specific grounds for reversal of the judgment. First, it is pointed out that the verdict of the jury appears to be based on 5% of the selling price of the inventory while the complaint contains an allegation that defendant agreed to pay the usual and customary commission of 3%. Leave was obtained to amend this figure to 5%, but the amendment was not in fact made. Therefore, defendant says, the verdict of the jury and the judgment are for a greater commission than that claimed in the complaint. However, it is to be noted that coupled with the specific allegation was an alternative allegation that defendant agreed to pay the usual or customary commission or a reasonable commission for the services rendered. This alternative allegation together with the evidence offered as to such customary commission of 5% for such transactions afforded sufficient basis for the jury verdict in this respect.

 Finally, defendant points out that the hardware business was operated as a partnership while plaintiff's alleged agreement, the complaint and the judgment treat it as an individual proprietorship owned by defendant. Thus, defendant argues, plaintiff did not prove the allegations of his complaint that he was employed by defendant to sell a business owned and operated by defendant. This issue was first raised in an amended answer filed several years after the filing of the complaint; plaintiff's reply thereto alleged that defendant was acting with the consent of his partner in such transaction. We have considered the sections of the Uniform Partnership Act and the cases

cited by defendant in this connection in the light of the evidence. It is true, of course, that in many respects a partnership is recognized as a legal entity distinct from the partners and that the stock in trade is owned by the partnership as an entity and not by the individual partners. But the record is clear in the instant case that during his dealings with plaintiff and the other witnesses defendant discussed the transaction as if he were the sole owner of the business and in no way indicated that it was operated as a partnership. In addition, the testimony of defendant's partner clearly shows an express agreement between them empowering the defendant to handle the sale of the business. It is to be noted that plaintiff is not attempting to recover his commission from partnership assets but rather from one of the partners individually. If the action were directed against the partnership as an entity or against the other partner, a different question would be presented. The judgment, however, runs against the defendant as an individual and can be satisfied only out of individual assets. Whether or not plaintiff's commission represents a partnership obligation is a matter to be settled between the partners and this decision has no bearing on such issue. Consequently, it must be concluded that plaintiff's complaint and reply stated a cause of action against the defendant which was supported by the evidence.

For the reasons stated, the judgment rendered in the trial court is affirmed.

*Judgment affirmed.*

SCHEINEMAN, P. J. and CULBERTSON, J., concur.