Monroe **W. ABELS**, Plaintiff-Appellee,

v.

**ICELAND PRODUCTS, INC.,** Defendant-Appellant.

No. 12744.

United States Court of Appeals
Seventh Circuit.

Jan. 28, 1960.

commissions and the allowance of interest thereon.

Iceland for some time had engaged in the business of importing into and selling in this country various seafoods, particularly fish. Until 1953, Iceland distributed its fish through a nationwide broker, North Star Fisheries, which in turn dealt with local brokers. Subsequently, Iceland dealt directly with local brokers.

Abels acted as broker in the Chicago, Illinois, area for Iceland commencing in 1951 and 1952 and concluding on November 8, 1954. Until June, 1954, he was a member of the partnership of Steele and Abels which acted first as subbroker for North Star Fisheries and later as direct representative of Iceland. Upon termination of the partnership, Abels in his individual capacity served as Iceland's broker.

There was an oral contract between Iceland and Abels under which Abels was to receive a brokerage of five per cent. This agreement was terminated by Iceland on November 8, 1954 in a letter written by Olafsson, the president of Iceland.

In his complaint, Abels charged that Iceland unreasonably terminated the brokerage agreement and that in subsequent sales Iceland thereby took advantage of Abels' special knowledge, skill and ability. He sought a judgment of $50,000, basing his claim of unjust enrichment on Iceland's sales to all its Chicago customers made after Abels' separation.

The trial court circumscribed the claim and allowed commissions of $8871.-69 to Abels limited to sales to two customers, Booth Fisheries (Booth) and Independent Fish Company (Independent). It further granted Abels interest in the amount of $1500. The trial court justified this result on the grounds that Abels "procured these customers and arranged for the sales."

There is no contention before this court that the termination of the brokerage contract was unreasonable. The parties agree that the contract of employ-

Harlan L. Hackbert, Robert L. Hesse, Chicago, Ill., Stevenson, Conaghan, Hackbert, Rooks & Pitts, Chicago, Ill., of counsel, for defendant-appellant.

Homer E. Rosenberg, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and MAJOR, Circuit Judges.

HASTINGS, Chief Judge.

This diversity case was brought by appellee, Monroe W. Abels (Abels), against appellant, Iceland Products, Inc. (Iceland) to recover commissions on Abels' brokerage of fish sold for Iceland. On this appeal, Iceland asserts error in the trial court's judgment for certain

ment was of indefinite duration and terminable at will. Abels argues that the sales on which the commissions were granted were either formally or informally concluded *prior to* November 8, 1954. Iceland contends that the sales in question were made incidental to contracts entered into *subsequent to* November 8, 1954, at which time it is conceded that Abels was no longer Iceland's broker.

The sales made to Booth after Abels' employment was terminated, on which a brokerage of $7252.74 was allowed, consisted of the following:

| Date | Inv. No. | Item | Lbs. | Amount |
|------|----------|------|------|--------|
| 11/26/54 | 6440 | Cod 8/7 | 60,032 | $14,959.97 |
| 12/15/54 | 6509 | " | 66,024 | 16,453.18 |
| 12/16/54 | 6515 | " | 33,992 | 8,470.81 |
| 2/ 2/55 | 6750 | " | 150,080 | 37,369.92 |
| 2/18/55 | 6838 | " | 150,080 | 37,369.92 |
| 3/ 7/55 | 6948 | Catfish 10/5 | 32,250 | 6,450.00 |
| 3/25/55 | 7053 | Cod 8/7 | 50,008 | 12,461.99 |
| 4/ 5/55 | 7120 | " | 75,040 | 18,699.97 |
| 4/13/55 | 7152 | " | 30,016 | 7,479.99 |
| 6/22/55 | 7820 | " | 17,752 | 3,550.40 |
| 11/14/55 | 8557 | Haddock 10/5 | 30,000 | 6,900.00 |
| 2/28/56 | 9082 | Cod 10/5 | 30,000 | 6,750.00 |

The record shows that during the summer and early fall of 1954, Abels bargained with the officials of Booth for the purpose of supplying Booth with cod suitable for processing into fish sticks. Fish sticks consist essentially of cod, which is cooked, breaded, and frozen, and then sold as a frozen food.

Prior to November 8, 1954, Abels arranged for the sale of a sample of 280 pounds of Iceland's cod to Booth. He then sold Booth a lot of 30,128 pounds of cod blocks for use in a test production run in Booth's St. Louis plant to determine whether Iceland's fish was suitable for mass production into fish sticks. Commissions were paid to Abels on these two sales. Shortly thereafter, a meeting was held in Chicago between Olafsson, Abels and Kentner, Booth's vice president in charge of sales, at which time the parties specifically discussed Iceland's supplying Booth's requirements of cod for the production run during the coming season.

The record shows Abels' uncontradicted testimony on this point:

"A. It was in the early fall of 1954 when the Booth Fisheries ascertained they could perhaps use the blocks from Iceland Products.

\* \* \* \* \* \*

"A. Kentner told Mr. Olafsson what his production schedule would be and what they planned to produce for the coming year and was Mr. Olafsson in a position to give him his needs; and Mr. Olafsson assured him he would; and then they talked about quality and the method they would use to bring in the production over the time that they needed it because there was no need of bringing a tremendous amount of fish in when it could be either stored in New York or stored in Iceland, bringing in what we call split shipments."

Olafsson and Abels then went to St. Louis to meet with other officials of Booth and found that the test run with Iceland's cod had been successful. A few days thereafter, on November 8, 1954, Olafsson notified Abels that his brokerage contract was discontinued. Subsequently, Booth ordered from Iceland the shipments of fish, supra.

The record clearly indicates that the parties, prior to November 8, 1954, were

negotiating for a specific sale to Booth for its next season's requirement of cod to be used in fish sticks. The bargain was dependent upon Iceland's cod being of the proper quality for use in processing fish sticks. Abels sold the trial order to Booth; the test was run; the answer was favorable. Delivery of the cod was to be made throughout the next season merely to alleviate storage problems.

Under such circumstances, we hold that Abels is entitled to the brokerage on Iceland's sale to Booth of its requirements of Cod for the production run during the coming season. There is no showing as to when such seasonal production run began and ended.

It is not controlling that the Booth-Iceland understanding was merely oral or that the orders for shipment for the next season's requirement of cod were all received subsequent to November 8, 1954. Abels was the procuring cause for these sales to Booth.

This result is consistent with Illinois law. See Scheske v. Wiechert, 1954, 2 Ill.App.2d 331, 119 N.E.2d 508, and Gould v. Ricard B. & E. Co., 1907, 136 Ill.App. 322. Further, it follows the custom and practice in the trade, as stated by Iceland's expert witness, Slutzkin, who testified that a broker is protected on sales which are "in the process of being contracted or consummated" at the time of his separation.

Although it was proper for Abels to recover commission on the sale to Booth of cod *during the ensuing production season,* reference to the schedule of sales, supra, on which the judgment was based indicates that it also includes commissions on sales of catfish and haddock and one sale of cod made almost a year and four months after the completion of the trial production run. The evidence indicates that catfish and haddock are not used in processing fish sticks. As to the Booth transaction, we are remanding solely for the purpose of having the trial court determine the extent of sales made by Iceland to Booth to satisfy the latter's requirements for cod used in fish sticks during the ensuing production season. On those shipments, Abels is entitled to his agreed commission of one cent per pound.

The trial court granted commissions to Abels on sales to Independent based on the following record of Iceland's shipments:

| Date | Inv. No. | Item | Lbs. | Amount |
|---|---|---|---|---|
| 10/27/54 | 6264 | Catfish 10/5 | 28,000 | $5,600.00 |
| 1/10/55 | 6619 | " | 30,000 | 5,100.00 |
| 1/21/55 | 6701 | " | 10,000 | 2,900.00 |
| 1/26/55 | 6717 | " | 24,995 | 4,249.15 |
| 2/ 2/55 | 6749 | " | 41,400 | 7,038.00 |
| 3/22/55 | 7025 | " | 27,500 | 4,812.50 |
| 7/25/56 | 9778 | " | 4,350 | 1,196.25 |

Prior to November 8, 1954, Iceland was anxious to dispose of a large amount of low-grade ocean catfish. Abels secured a sale by sample of this catfish to Independent. Upon partial shipment, the fish was rejected since it was not the quality of the sample. Subsequently, Iceland and Independent renegotiated the sale of this catfish at a slightly lower price. The first shipment of this sale was made on October 27, 1954, prior to Abels' discharge.

We hold that on the sale of this low-grade catfish to Independent contracted for prior to Abels' discharge, he is entitled to his commission, even though the sale price was renegotiated subsequent to November 8, 1954. Groome v. Freyn Engineering Co., 1940, 374 Ill. 113, 128, 28 N.E.2d 274.

On oral argument, counsel for Iceland stated that the judgment for commissions on sales to Independent did not include the sale of 4,350 pounds of "first-class" catfish made on July 25, 1956. However, brokerage was allowed on the sale of 10,000 pounds of catfish sold on January 21, 1955, which was alleged to be "first-class" catfish, and therefore not within the scope of the original agreement to dispose of Iceland's low-grade catfish.

We are remanding as to the Independent transaction solely for the purpose of having the trial court determine which sales listed in the schedule, supra, were within the scope of the original agreement to dispose of Iceland's low-quality catfish. On such sales, Abels is entitled to the agreed commission of one cent per pound.

■ The trial court found that Abels was entitled to judgment against Iceland in the amount of $8,871.69. On this amount, Abels claimed 6% interest from the date sales were made to Booth and Independent following Abels' discharge. Iceland contested Abels' right to interest, the rate of interest claimed, and the sufficiency of the evidence to establish dates upon which such interest might accrue. The trial court compromised these objections and granted interest in the even amount of $1500.00.

The right to interest arises, if at all, only by virtue of the Illinois Interest Act, Smith-Hurd Ill.Ann.Stat., ch. 74, § 2.[1] Under the provisions of this statute, we hold that no interest is allowable on Abels' claim, and that part of the judgment below is reversed.

This cause is remanded to the district court for further determination consistent with the views expressed herein.

Reversed in part and remanded.

---

[1]. "Creditors shall be allowed to receive at the rate of five (5) percentum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement on account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment." ◂