Steven S. SCHOLES, not individually, but solely as Receiver for Michael S. Douglas, D & S Trading Group, Ltd., Analytic Trading Systems, Inc., Analytic Trading Service, Inc., and Market Systems, Inc., Plaintiff,

v.

AFRICAN ENTERPRISE, INC., Bethany Evangelical Free Church, Calvary Chapel of Chula Vista, Camp Elim and other Youth Ministries of Haiti, Food for the Hungry, Inc., Gospel Revival Ministries, Heart Cry International, Hindustan Bi-

ble Institute, Inc., International Students, Inc., Lake Forest Academy, Lakeland Evangelical Free Church, Operation Brotherhood West Center, Proclamation International, Trinity College, Trinity Evangelical Divinity School, World Vision Inc., and Camp Forest Springs, Defendants.

No. 90 C 3989.

United States District Court, N.D. Illinois, E.D.

Nov. 16, 1993.

**350**

Wilber H. Boies, Gary L. Prior, Richard Lawton Sandler, Jane M. Simon, Michael V. Hughes, Mary B. Tribby, Mark Thomas Ostrowski, McDermott, Will & Emery, P.C., Ruta K. Stropus, Sachnoff & Weaver, Ltd., Chicago, IL, for plaintiffs.

Timothy C. Klenk, Jerome Kiley Bowman, Pope, Ballard, Shepard & Fowle, Ltd., Catherine Patricia Wassberg, Jenner & Block, Robert Ronald Tepper, Law Offices of Robert R. Tepper, Chicago, IL, Paul B. Newman, Newaygo, MI, Scott H. Kenig, O'Neill & Bockelman, P.C., Lake Forest, IL, C. William Bockelman, Jr., O'Neill & Bockelman, P.C., Lake Forest, IL, James A. Davids, Bruce J. Van Heukelem, Hoogendoorn, Talbot, Davids, Godfrey & Milligan, Chicago, IL, H. Robert Showers, Peter Rathbun, Gannon & Grange, McLean, VA, for defendants.

### MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

At issue in this case is whether an equity receiver for certain defunct entities has asserted cognizable claims on behalf of the entities to recover funds allegedly fraudulently transferred by a principal of the entities to the defendants. In his First Amended Complaint, plaintiff Steven S. Scholes, as Receiver ("the Receiver") for Michael S. Douglas, D & S Trading Group, Ltd. ("D & S"), Analytic Trading Systems, Inc. ("AT Systems"), Analytic Trading Service, Inc. ("AT Service"), and Market Systems, Inc. ("MSI"), collectively referred to as the receivership entities, asserts 51 Counts. He asserts a fraudulent conveyance count, an unjust enrichment count and a constructive trust count against each of the 17 Charity defendants. Presently before the court are the parties' Objections, and corresponding Responses, to the recommendation of Magistrate Judge Pallmeyer to grant in part and deny in part the Motion to Dismiss brought by defendants African Enterprise, Inc., Bethany Evangelical Free Church, Food for the Hungry, Inc., Hindustan Bible Institute, International Students, Inc., Proclamation International, Inc., Trinity College, Trinity Evangelical Divinity School, World Vision, Inc., Lake Forest Academy, Heart Cry In-

ternational, and Camp Elim and Other Youth Ministries of Haiti.[1] Collectively, these defendants are referred to as the Charities or generally as the defendants.

## I. FACTS[2]

On November 13, 1989, the Securities and Exchange Commission ("SEC") filed an action in this District Court against Douglas and three of the receivership entities (D & S, AT Systems and AT Service), alleging numerous violations of federal securities laws. Complaint, ¶ 2. On November 30, 1989, this court appointed Steven S. Scholes as equitable receiver for defendants in the SEC action and directed Scholes to take possession of and liquidate all their choses in action and to recover their assets. Id. The Receiver purports to bring this action pursuant to his obligations under the November, 1989 order and a subsequent order in which the court placed MSI in receivership and appointed Scholes as its receiver, as well. Id. ¶ 3. The Receiver asserts that jurisdiction over this action is ancillary to the court's jurisdiction over the SEC action. Id. ¶ 4.

Beginning in 1987, Douglas created an investment partnership, D & S, of which he was a general partner. Id. ¶ 6. Douglas and others diverted and misappropriated funds belonging to D & S for their own use. Id. ¶ 7. In 1988, Douglas and others created another investment partnership (which was never named), of which AT Systems was the general partner. AT Systems had been created as a mechanism into which D & S funds could be funnelled without notice to state securities regulators, and then looted. Id. ¶ 9. In 1989, Douglas and others created AT Service, which was intended to be the managing general partner of a partnership into which both D & S and AT Systems funds could be funnelled, again without drawing the attention of regulators. Douglas managed the affairs of AT Service through MSI, a wholly owned corporation funded with assets belonging to the defendants in the SEC ac-

tion. Id. ¶ 10. Douglas and others formed both AT Service and MSI "in order to loot them." Id.

The Complaint asserts fifty-one counts, three counts against each of the seventeen defendant Charities. The Receiver alleges that each of the Charities received assets diverted from one or more of the receivership entities. With respect to all but three of the Charities, it is alleged that the diverted assets were in the form of checks drawn on Douglas' personal bank accounts. (The source of the allegedly diverted assets now in the hands of the remaining defendant Charities is not stated.) The Receiver alleges that the Charities' receipt of the allegedly diverted assets constitutes a fraudulent conveyance (Counts I, IV, VII, X, XIII, etc.); violates fundamental principles of justice, equity and good conscience, and therefore constitutes unjust enrichment (Counts II, V, VIII, XI, etc.); and requires imposition by this court of a constructive trust on the improperly obtained assets (Counts III, VI, IX, XII, etc.).

## II. BACKGROUND

In their Motion to Dismiss, defendants argue that this suit should be dismissed because (1) the Receiver lacks standing to assert the fraudulent conveyance claims, (2) the court lacks personal jurisdiction over six of the Charities, (3) the Complaint fails to state a claim for fraudulent conveyance under the Illinois statute, (4) the Complaint fails to state a claim for imposition of a constructive trust and (5) the Complaint fails to state a claim for unjust enrichment. The issues of personal jurisdiction were subsequently separated from the other arguments and will be addressed separately. In her January 5, 1993 Report and Recommendation ("R & R") on the motion, Magistrate Judge Pallmeyer recommended granting defendants' motion as to the unjust enrichment claims and constructive trust claims, and recommended denying the motion as to the fraudulent convey-

---

1. The court recently granted the Receiver's Application for Approval of Settlement Agreement with Trinity Evangelical Divinity School and Food for the Hungry, Inc. Therefore, this Motion to Dismiss is moot as to those two defendants.

2. The facts set out below are from the First Amended Complaint and set out in the R & R and are deemed true for purposes of the motion to dismiss. See R & R, at pp. 3–5; Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

ance claims. *Scholes v. African Enterprise, Inc.,* No. 90 C 3989 (N.D.Ill. January 5, 1993) (Report and Recommendation of Magistrate Judge Pallmeyer). Both sides submitted Objections to the R & R and Responses to the others' Objections. Pursuant to 28 U.S.C. § 636(b), this count will review *de novo* those portions of the R & R to which objections are made.

## III. *DISCUSSION*

### A. *Fraudulent Conveyance Claims*

#### 1. *Standing*

In their motion, defendants argued first that the Receiver lacks standing to raise the fraudulent conveyance claims. Defendants argued that the Receiver lacks standing because (1) the Illinois fraudulent conveyance statute in effect at the time allows only creditors to raise such a claim and the Receiver is not a creditor, (2) the order appointing Scholes receiver does not allow him to raise such a claim, and (3) by law, a Receiver cannot assert such claims which belong to third parties and not to the receivership entities. The Magistrate Judge concluded that the Receiver has standing and creditor status to raise fraudulent conveyance claims under the Illinois law. R & R, at p. 23. The defendants object to this conclusion by arguing that the Magistrate Judge improperly relied on bankruptcy decisions and that she failed to give proper credence to prior orders of this court. This court will address first the issue of whether the Receiver can raise claims of third parties.

In the R & R, the Magistrate Judge extensively and thoroughly analyzes analogous case law and determines that the Receiver has standing to raise fraudulent conveyance claims that benefit the general creditors of the receivership entities. R & R, at pp. 9, 15, 23. In their objections to this conclusion, the defendants argue that the case law is clear that equity receivers have no standing to raise claims of third parties. Defs.' Objections, at pp. 6–12. In response, the Receiver argues that the case law does not preclude a receiver from asserting fraudulent conveyance claims. Pl.'s Resp. to Defs.' Objections ("Pl.'s Resp."), at pp. 2–11. All the parties

and the R & R initially focus on the Supreme Court's holding in *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). *Caplin* is, thus, a good starting point.

Defendants argue that *Caplin* denies a trustee, appointed under the old Bankruptcy Act, standing to assert claims of third parties. Defendants further argue that an equity receiver, like Scholes, possesses authority comparable to and no greater than a trustee under the old Bankruptcy Act. Defs.' Objections, at p. 6. The Receiver counters that the defendants misread *Caplin* because in *Caplin* the trustee plaintiff conceded he was raising the claims of third-party debenture holders and not claims belonging to the entities in receivership. Pl.'s Resp., at p. 4. The Magistrate Judge essentially agreed with the Receiver and held that pre-*Caplin* cases which apply to the facts of this case allow the Receiver to raise such claims and that *Caplin* did not alter this conclusion. R & R, at pp. 6–9. This court agrees with the Magistrate Judge's view of *Caplin* but feels that a discussion of the *Caplin* line of cases at this point is premature.

Defendants argue that the Receiver lacks standing to raise the fraudulent conveyance claims because an equity receiver cannot raise claims of third parties. Defendants never discuss, however, *why* these claims belong to third parties and not to the receivership entities. The Receiver similarly fails to offer any analysis as to *who* was more directly injured as a result of Douglas' fraudulent conveyances—the entities themselves, or the investors. It seems to the court that this determination will significantly clear up the morass of the standing issue.

"At the core of the standing doctrine is the requirement that a plaintiff 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief' [citations omitted]." *County of Riverside v. McLaughlin,* 500 U.S. 44, ——, 111 S.Ct. 1661, 1667, 114 L.Ed.2d 49 (1991). Thus, the issue is who has sustained sufficient *personal* injury—the entities or the investors. The briefs of the parties lack any citation to authority on the injury requirements of standing. *See*

*County of Riverside,* 500 U.S. at ——, 111 S.Ct. at 1667 (personal injury at "core" of standing doctrine); *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (personal injury a "core component" of standing); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (at a "minimum", plaintiff must "show that he personally suffered some ... injury"). These cases emphasize that standing necessarily involves a determination of redressable, cognizable injury to the plaintiff. Here, an analysis of who actually sustained the most direct injury, based on the allegations in the Complaint, demonstrates that the receivership entities have sustained the most direct, personal injuries as a result of Douglas' fraud and that the investors sustained only derivative injuries.

The Receiver has alleged direct, palpable injury to the receivership entities caused by Michael Douglas' actions. Once invested with the entities, the investor funds became partnership property. *See* 805 ILCS 205/8 (1992) (formerly ILL.REV.STAT. ch. 106½, ¶ 8 (1991)) ("All property ... acquired ... on account of the partnership is partnership property."); *see also Scheske v. Wiechert,* 119 N.E.2d 508, 510, 2 Ill.App.2d 331 (4th Dist. 1954) ("the stock in trade is owned by the partnership as an entity and not by the individual partners"). Defendants here cite no evidence in opposition to this fundamental concept. In fact, in a case involving a Ponzi scheme and facts similar to this case, the Seventh Circuit held that "[i]f looting occurred, then [the looted entity] was injured, and [the entity's] receiver may chase [the recipient] to regain some of the misappropriated funds". *Southmark Corp. v. Cagan,* 999 F.2d 216, 223 (7th Cir.1993) (citing *Schacht v. Brown,* 711 F.2d 1343, 1348 (7th Cir.1983)); *see also Commodity Futures Trading Commission v. Tobin,* No. 89 C 8576, Comm.Fut. Law R. (CCH) at ¶ 25, 725–26, 1993 WL 157513 (N.D.Ill. May 10, 1993) (recognizing that a receiver can sue to recover transfers that harm the entity). Thus, the Charities have failed to show that the Receiver is unable to prove that when Michael Douglas misappropriated and transferred the invested funds, the partnership entities were thereby directly injured.

■ Therefore, because the entities *qua* entities suffered direct injury from the alleged fraudulent activities of Douglas and the defendants, the Receiver possesses the authority to assert causes of action on behalf of the general, managing partners of the entities to redress such wrongs. Whether or not the Illinois fraudulent conveyance statute, which allows "such creditors, purchasers and other persons" to bring such claims, recognizes the Receiver as a proper plaintiff is another matter. *See* ILL.REV.STAT. ch. 59, ¶ 4 (1987) (repealed by P.A. 86–814, § 13, effective January 1, 1990).

The Magistrate Judge recognized that the Illinois statute limits standing to creditors or "such other persons" and concluded that the Receiver is a proper plaintiff under the Illinois statute. R & R, at pp. 15–22. Defendants object on pragmatic grounds but cite no authority for their interpretation of the Illinois statute. The Receiver, in his Response, similarly does not rely on the relevant Illinois statute. The court agrees with the conclusion of the Magistrate Judge.

■ The relevant portion of the Illinois fraudulent conveyance statute in effect at the time of the conveyances alleged here states: "Every gift [or] conveyance ... made with intent to ... defraud creditors or other persons ... shall be void as against such creditors, purchasers and other persons." ILL. REV.STAT. ch. 59, ¶ 4 (1987). The broad language of this provision alone seems to allow the Receiver to raise the claim. Very little doubt arises that conveyances were made and that these conveyances were made to defraud creditors or other persons. All parties agree that a gift or conveyance was made to each defendant. Furthermore, each conveyance was made by Michael Douglas with the intent to defraud the investors and the entities themselves as evidenced by the fact that Michael Douglas pleaded guilty to fraud charges and is currently incarcerated. This clearly meets the requirements of "intent to defraud creditors or other persons". The final requirement of the Illinois statute is whether or not the conveyances are "void

as against" the Receiver. The answer to this question is less clear.

As the Magistrate Judge noted, the case law indicates that, in general, "only creditors who had existing claims at the time of the conveyance may bring a fraudulent conveyance claim." R & R, at p. 16 (citing *Mandolini Co. v. Chicago Produce Suppliers, Inc.*, 184 Ill.App.3d 578, 581, 132 Ill.Dec. 765, 767–68, 540 N.E.2d 505, 507–08 (1st Dist.1989); *In re Martin*, 113 B.R. 949, 959 (Bankr. N.D.Ill.1990), *vacated*, 124 B.R. 69 (N.D.Ill. 1991)). In *Mandolini*, creditors of an insolvent entity, CPS, sued a CPS-affiliated entity, S & M Produce, to recover funds transferred from S & M to CPS. In reversing the lower court's holding in favor of the plaintiff creditor, the court held that the "general law in Illinois is that only those creditors who had existing claims at the time of the transfer may complain that the transfer of property was made in derogation of their rights". *Mandolini*, 540 N.E.2d at 507. Defendants here rely on this proposition and argue that the Receiver was not and is not a creditor of the entities.

*Mandolini*, however, is distinguishable from the case at bar for two reasons. First, in support of its holding, *Mandolini* relied on *Chicago Daily News Co. v. Siegel*, 212 Ill. 617, 629–30, 72 N.E. 810 (1904) which, in turn, reasoned that "[i]f the conveyance was made before the indebtedness was incurred, then there was no fraud, as there was no design to hinder or delay creditors at the time". *Mandolini*, 540 N.E.2d at 507. Here, there clearly was a "design" to perpetrate fraud from the beginning. Thus, the purpose of requiring a concomitant debt is inapposite to these facts. Second, *Mandolini* expressly recognizes this concept. As declared by the court, "[a]n exception to the general rule provides that a voluntary conveyance may be set aside at the instance of subsequent creditors upon proof of actual fraudulent intent." *Mandolini*, 540 N.E.2d at 509 (citing 20 *ILP Fraudulent Conveyances* § 204; *Cramer v. Bode*, 24 Ill.App. 219 (1887); *National City Bank v. Cowdin*, 343 Ill. 430, 175 N.E. 411 (1931)). The Complaint here sufficiently alleges Douglas' actual fraudulent intent. The Receiver, therefore, need not be a concomitant creditor to raise the fraudulent conveyance claims. Thus, defendants' objections to this effect are overruled.

As the Magistrate Judge noted, however, "[n]either party has cited controlling authority interpreting the fraudulent conveyance statute in an action by a court-appointed receiver against the recipient of a conveyance from the very entity for which the receiver acts." R & R, at p. 17. Based on the wording of the fraudulent conveyance statute and analogous case law, however, this court finds that the Receiver is the proper, and perhaps exclusive, plaintiff to seek redress for the alleged facts based on the unique circumstances of this case. First, the words of the statute make clear that the set of appropriate persons, against whom fraudulent conveyances are void, is open-ended. Section 4 provides that such conveyances are void as against "creditors, purchasers and *other persons*". Ill.Rev.Stat. ch. 59, ¶ 4 (1987) (emphasis added). Use of the phrase "and other persons" in the statutory provision indicates that persons other than creditors can bring such claims. Given the equitable nature of a suit to set aside fraudulent conveyances in the hands of third parties, *see Tcherepnin v. Franz*, 489 F.Supp. 43, 45 (N.D.Ill.1980), the court finds that the equities weigh in favor of interpreting the terms "such persons" in the Illinois statute to allow the Receiver in this case to assert violations of the fraudulent conveyance statute.

Secondly, analogous Illinois case law cited by the Magistrate Judge favors this interpretation of the Illinois statute in this case. First, in *Republic Life Ins. Co. v. Swigert*, 135 Ill. 150, 25 N.E. 680 (1890), a case upon which defendants rely, the Illinois Supreme Court refused to allow an insurance company receiver to assert fraudulent conveyance claims against the stockholders of the insurance company. In *Swigert*, the insurance company directors resolved to allow all stock subscribers to cancel their subscription contracts and thereby reduce their stock holdings to the number of shares represented by the amount each had already paid on the original stock subscription. In response, "a large number of the subscribers to the stock

of said company surrendered their certificates of stock upon which but 20 per cent had been paid, and received in lieu thereof certificates for one-fifth the number of shares of stock so surrendered." *Swigert,* 25 N.E. at 681. According to the receiver in that case, the board resolution reduced the assets of the corporation, thus hindering its ability to pay creditors. He therefore asserted claims against the stockholders to recover the funds they would have otherwise owed the company. The Illinois Supreme Court refused to allow him to assert the claims because they "belong[ed] to the creditors only". *Swigert,* 25 N.E. at 684. The claims belonged exclusively to the creditors, according to the court, because the action by the company's board of directors was an otherwise legitimate corporate action. As such, the corporation itself could not assert the claim. Thus, "the only liability [was] to the creditors", which the receiver could not assert. *Swigert,* 25 N.E. at 684–85. *Swigert* thus, reinforced the idea that receivers cannot raise claims of third parties. The facts of the case at bar, however, and the Illinois Supreme Court's subsequent decision in *Peabody v. New England Waterworks Co.,* 184 Ill. 625, 56 N.E. 957 (1900), make *Swigert* inapposite to this case.

Here, as opposed to the facts of *Swigert,* Douglas' actions were not legitimate partnership undertakings. Douglas' actions defrauded not just creditors but also the entities in receivership, for which he was supposed to be acting in a fiduciary capacity. When Douglas misappropriated funds belonging to the receivership entities, he defrauded and directly injured the entities. *See supra.* As such, each entity could sue in its own name to recover those monies. Thus, *Swigert* does not control and the Receiver can sue on behalf of the entities.

Furthermore, in *Peabody,* the Illinois Supreme Court retreated somewhat from *Swigert. Peabody* quoted the *Swigert* holding and then noted that "but, [where a receiver's] powers are derived from a statute, *or from a lawful decree of court* . . . he is not circumscribed and limited by the right which was vested in and available" to the entity. *Peabody,* 56 N.E. at 958–59 (emphasis added). In *Peabody,* the receiver was appointed un-

der a statute regarding corporations and the statute did not expressly or impliedly grant the receiver any authority to assert claims of third parties. Nevertheless, the court allowed the receiver to "defend not only the corporation but protect its creditors and stockholders from collusive and fraudulent judgments". *Peabody,* 56 N.E. at 960. In this case, Scholes is acting under authority of a decree of this court allowing him to assert claims to recover assets of the receivership entities. Although there is no Illinois case law expressly allowing a receiver in such a situation to bring a fraudulent conveyance claim under the fraudulent conveyance statute, *see* R & R, at p. 17, there is also no case law to the contrary, and this court finds that a receiver in such a situation is a proper party to raise the claim. *See Federal Reserve Bank v. Omaha Nat'l Bank,* 45 F.2d 511, 518 (8th Cir.1930) ("the receiver of an insolvent bank is ordinarily the party to bring suit for the purpose of having [fraudulent] transfers adjudged null and void.").

Neither *Caplin* nor the pre-*Caplin* line of cases, on which the Magistrate Judge relies, affects this outcome. First, as stated, *Caplin* dealt with a trustee under the old Bankruptcy Act, 52 Stat. 83, asserting claims "on behalf of persons holding debentures" in the bankrupt entity. *Caplin,* 406 U.S. at 416, 92 S.Ct. at 1679. There was never any assertion that the trustee was suing on behalf of the bankrupt entity, as there is here. This court, in fact, continues to adhere to the holding in *Caplin,* as it must, that receivers may not assert claims of third parties. Furthermore, as the Magistrate Judge found, pre-*Caplin* cases support receiver standing in the present situation. *See* R & R, at pp. 7–9 (discussing *McCandless v. Furlaud,* 296 U.S. 140, 56 S.Ct. 41, 80 L.Ed. 121 (1935) (recognizing the receiver's authority to recover fraudulent conveyances because the receiver held the assets of the corporation "as a trust" and he had authority to bring the funds "back into the trust"); *Moore v. Bay,* 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931) (finding a trustee's authority to set aside a fraudulent conveyance broader than an individual creditor's)). Thus, defendants' objections that the cases relied upon by the Mag-

istrate Judge are not relevant to the facts here are overruled.

Therefore, for the foregoing reasons, the court holds that Scholes, as the Receiver for D & S, AT Systems and AT Service, possesses standing and is the proper party to raise the fraudulent conveyance claims against these defendants.

### 2. *Failure to State Fraudulent Conveyance Claims*

As to the adequacy of the pleadings, the Magistrate Judge found that "[t]he Receiver has adequately pleaded that the transfers to Defendant Charities were fraudulent in law." R & R, at p. 26. Defendants object, saying the Receiver "never identifies any pre-existing creditors or the amounts of their claims," that the Receiver "lumps together the debts of Douglas and the other entities," and that consideration supported the transfers. Defs.' Objections, at p. 13. These objections are overruled.

First, a claim of fraudulent conveyance does not always require the existence of a pre-existing creditor. As stated *supra,* "an exception to the general rule provides that a voluntary conveyance may be set aside at the instance of subsequent creditors upon proof of actual fraudulent intent." *Mandolini,* 540 N.E.2d at 509. As Scholes alleges, and the court takes as true, "Douglas and others embarked upon a scheme to create an investment partnership ... and then to misappropriate its assets." First Amended Complaint, at p. 4 ¶ 6. The allegations of Douglas' mental state to actually defraud investors and the entities are sufficient. Furthermore, a "contemplated indebtedness" is sufficient and Scholes' allegations suffice to show that the entities and the investors could be shown to be contemplated claimants. *See Indiana Nat'l Bank v. Gamble,* 612 F.Supp. 1272, 1276 (N.D.Ill.1984). Thus, defendants' objection that Scholes failed to allege the existence of a pre-existing creditor is overruled.

Defendants'. objection that the Receiver impermissibly lumps together the debts of Douglas and other entities is similarly overruled. In support of this objection, defendants cite a Report and Recommendation of Magistrate Judge Weisberg in *Scholes v. Moore,* No. 90 C 6615, at pp. 23–24 (N.D.Ill. June 28, 1991) (Mag. J. Weisberg). This, however, is not dispositive. A motion to dismiss will not be granted unless the movant can show that under no set of facts could plaintiff prove the claim. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Defendants cannot meet this burden by arguing that Scholes lumps together the debts of Douglas. It is sufficient under the notice pleading requirements of the Federal Rules of Civil Procedure that plaintiff alleges that Douglas fraudulently transferred and misappropriated funds, in general, to defendants and others and that these transfers caused the receivership entities to become insolvent. Plaintiff's fraudulent conveyance claims will not be dismissed on this ground. This objection is overruled.

Next, the Charities object that "consideration ... support[s] Douglas' transfers to the charities" but that "a conveyance of the sort alleged here is only actionable if there was no consideration". Defs.' Objections, at p. 13. This objection is also overruled. First, the Receiver alleges in each fraudulent conveyance claim that the conveyances were made "without valid consideration". First Amended Complaint, at ¶¶ 17, 38, 55, 71, 88, etc. This is sufficient to withstand a motion to dismiss. Furthermore, defendants' objection that all conveyances to charitable organizations are necessarily made with valid consideration is overruled. Factual questions prevent the court from deciding this issue on this motion to dismiss. *See* R & R, at pp. 25–26 and cases cited therein. Whether or not valuable consideration was given for the transfers at issue in this case is more properly addressed in a motion for summary judgment or at trial. This objection is overruled.

Therefore, the recommendation of the Magistrate Judge is accepted. Defendants' Motion to Dismiss plaintiff's fraudulent conveyance claims is denied.

### B. *Constructive Trust and Unjust Enrichment Claims*

In the R & R, Magistrate Judge Pallmeyer concluded that the Receiver's constructive

trust claims should be dismissed because constructive trust is a remedy and not a cause of action. She also recommended dismissing the unjust enrichment claims because constructive trust is the exclusive remedy for unjust enrichment which requires some wrongdoing and the Receiver did not allege any wrongdoing on the part of the Charities. R & R, at pp. 27–30. The Receiver objects to each of these recommendations, saying Illinois recognizes the cause of action of constructive trust and that wrongdoing on the part of the Charities is not a requirement of an unjust enrichment claim. Defendants respond by arguing that constructive trust is not a cause of action and that wrongdoing on the part of defendants is necessary for the unjust enrichment claims.

First, the court overrules the objections of the Receiver regarding the constructive trust claims. Imposition of a constructive trust is a remedy and not a cause of action. *See* R & R, at pp. 27–30 and cases cited therein. As such, the claims of constructive trust are dismissed. A constructive trust may be an appropriate remedy in this case but may not be asserted as a separate cause of action.

Next, the Receiver objects that an unjust enrichment claim does not require allegations of wrongdoing by the defendants because a constructive trust is not the sole remedy for unjust enrichment, and that he has adequately alleged a cause of action for unjust enrichment. The Receiver's objection is sustained. In support of the assertion that the sole remedy for unjust enrichment is imposition of a constructive trust, the Magistrate Judge cited *Steinberg v. Chicago Medical Sch.,* 69 Ill.2d 320, 328, 13 Ill.Dec. 699, 703, 371 N.E.2d 634, 638 (1977). The R & R states "[a]s the Illinois Supreme Court has stated, a constructive trust is imposed 'to redress unjust enrichment where there is either actual fraud or implied fraud resulting from a fiduciary relationship'." R & R, at p. 29 (quoting *Steinberg,* 13 Ill.Dec. at 703, 371 N.E.2d at 638). The R & R goes on to cite a Seventh Circuit case for the proposition that "a constructive trust 'will not be imposed unless the complaint makes specific allegations of wrongdoing, such as fraud, breach of fiducia-

ry duty, duress, coercion or mistake'." R & R, at p. 29 (quoting *Amendola v. Bayer,* 907 F.2d 760, 763 (7th Cir.1990)). Based on these quotations, the Magistrate Judge concluded that constructive trust is the exclusive remedy for unjust enrichment and that wrongdoing on the part of the defendant is therefore required for a claim of unjust enrichment. R & R, at p. 29. This court disagrees with the Magistrate Judge's conclusion based on these two cases.

*Steinberg* does not stand for the proposition that imposition of a constructive trust is the exclusive remedy of an unjust enrichment claim. In *Steinberg,* the plaintiff applied for admittance to the defendant medical school. The defendant rejected him. The plaintiff asserted four causes of action, one of which charged fraud, another of which charged unjust enrichment. The Illinois Supreme Court upheld the dismissal of both claims. In so doing, it held that "a construct trust *may* be imposed to redress unjust enrichment where there is either actual fraud or implied fraud ...". *Steinberg,* 13 Ill.Dec. at 703, 371 N.E.2d at 638 (emphasis added). Contrary to the deduction reached in the R & R, this language does not imply that constructive trust is the exclusive remedy for unjust enrichment. Therefore, the ultimate conclusion that the unjust enrichment claims require allegations necessary for imposition of a constructive trust is misplaced.

Furthermore, this court believes that unjust enrichment can be pleaded as a separate cause of action in Illinois. In *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.,* 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672 (1989), the Illinois Supreme Court implicitly held that unjust enrichment exists as an independent cause of action. In *HPI,* the court noted that

[t]he doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies, including the equitable remedy of constructive trust and the legal actions of assumpsit and restitution or quasi-contract. [citation omitted]. To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defen-

dant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.

*HPI*, 137 Ill.Dec. at 25–26, 545 N.E.2d at 678–79. Thus, the Illinois Supreme Court recognized unjust enrichment as an independent claim. No cases cited by the defendants point persuasively to the contrary. Therefore, plaintiff's objection is sustained. The Receiver's claims for unjust enrichment will not be dismissed.[3]

## IV. CONCLUSION

For all the foregoing reasons, plaintiff's objections are sustained in part and overruled in part and defendants' objections are sustained in part and overruled in part. The defendants' Motion to Dismiss is granted to the extent that the claims of constructive trust are dismissed and only to the extent these claims are presented as distinct, independent causes of action. This conclusion does not prejudice the Receiver's right to seek a remedy of imposition of a constructive trust. The defendants' Motion to Dismiss is denied in all other respects.

---

3. By not dismissing plaintiff's unjust enrichment claims, the court does not mean to imply that the facts of this case necessarily fit into the class of cases to which the theory of unjust enrichment was intended to apply. Whether or not the defendants have retained a "benefit" to which unjust enrichment applies will be addressed on a motion for summary judgment in light of the facts presented.