James P. JOHNSON, as Equity Receiver to Collect Assets, on behalf of the Claimants of Chilcott Commodities Corporation, Chilcott Portfolio Management, Inc., Thomas D. Chilcott, d/b/a Chilcott Futures Fund, Thomas D. Chilcott, and Chilcott Futures Fund, Plaintiff,

v.

Joseph STUDHOLME and Renabelle B. Studholme, Defendants.

Civ. A. No. 85–M–794.

United States District Court, D. Colorado.

Oct. 15, 1985.

Gerald L. Bader, Jr., Pamela Nagle Hultin, Ann L. Duckett, Bader & Cox, Denver, Colo., for plaintiff.

John A. Studholme, Fred Clifford, Boulder, Colo., for defendants.

MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

In Civil Action No. 81–F–999, an action brought by the Commodity Futures Trading Commission, James Johnson was appointed Equity Receiver for Chilcott Commodities Corporation, Chilcott Portfolio Management, Inc., Thomas D. Chilcott, d/b/a Chilcott Futures Fund, and Thomas D. Chilcott, to take control of all of the properties and interests and exercise all the rights and powers of those defendants in that case. The reasons for that action have been explained fully in other opinions by other judges in this district. See the orders in *CFTC v. Chilcott Commodities Corp., et al.,* No. 81–F–999 (D.Colo. August 30, 1982) (Finesilver, J.) *aff'd in part and rev'd in part,* 713 F.2d 1477 (10th Cir. 1983); *Johnson v. Chilcott,* 590 F.Supp. 204 (D.Colo.1984) (Carrigan, J.); *Johnson v. Chilcott,* 599 F.Supp. 224 (D.Colo.1984) (Carrigan, J.); *Niagra Fire Insurance v.*

*Johnson,* No. 84–A–746 (D.Colo. August 2, 1984) (Arraj. J.); *Johnson v. Miller,* 596 F.Supp. 768 (D.Colo.1984) (Kane, J.). In summary, Thomas Chilcott, president of Chilcott Portfolio Management, Inc., operated a classic "Ponzi" scheme and obtained millions of dollars from hundreds of investors by representing that their money would be pooled in a highly profitable investment fund. He induced a constant stream of new investments by misrepresenting the Fund's performance and gave the appearance of success by using the funds from new investments to pay fictitious profits to earlier investors. When the scheme lost momentum, most investors lost their money. The operations ended in June, 1981.

The receiver brought this and other actions against all those investors who received payments from Chilcott. He seeks to recover as "fictitious profits" (the amounts paid to the investors in excess of their contributions) for distribution to the receivership estate's creditors and claimants. The receiver does not purport to assert any claims on behalf of defrauded investors. Recovery is sought under claims for relief based on theories of (1) recovery of receivership assets, (2) unjust enrichment, (3) conversion, and (4) money had and received. Jurisdiction is ancillary to the main receivership action in this district. The defendants have moved to dismiss these claims under F.R.Civ.P. 12(b)(6).

■ In considering this motion, the court must assume that the plaintiff can prove all of the facts alleged in the complaint. What is most significant, however, is what the plaintiff has not alleged. There is no allegation that any defendant committed fraud or participated in the scheme. Indeed, there is no allegation that any of the defendants knew that the Fund was a Ponzi scheme, and no allegation that the defendants received these payments with anything less than a good faith belief that it was a legitimate return on their investment as part of a contractual relationship with the Fund.[1] In short, the defendants simply received payments which appeared to be the very performance which was promised to them when they made their investments in the Fund. The basic premise of the plaintiff's claims is that fairness requires a redistribution of the effects of Thomas Chilcott's fraud by collecting from those who received more than their investments and paying those who participate in the receivership estate. It should be emphasized that the receiver is not asserting the rights or claims of any investors, and that distribution is not to be made to a class of investors. What may be collected from these early investor defendants would become a part of the general receivership estate.

The cases upon which the receiver places principal reliance are not applicable because they are dependent upon substantive provisions of the bankruptcy code. The Utah bankruptcy court applied the recovery from voidable transfer provisions of 11 U.S.C. § 550, and the avoidance of transfers within one year before bankruptcy provision of 11 U.S.C. § 548(b) to recover Ponzi scheme payments in *In re Independent Clearing House Co.,* 41 B.R. 985 (D.Utah Bkrtcy 1984). The recovery was, of course, limited to the payments made in the one year period before the filing of the bankruptcy petition.

■ The decision rests solely upon the application of federal bankruptcy law and does not purport to create any equitable right of action. The plaintiff argues that an equity receiver has the powers of a

---

1. The investment agreement provided, in part, as follows:

"THIS AGREEMENT, made and entered into this ___ day of ___, among THOMAS D. CHILCOTT, hereinafter called 'Managing Agent,' (and ___), hereinafter called 'Investor'.

WHEREAS, the investor has agreed to make contributions to a common investment fund, hereinafter called the 'investment fund', and

WHEREAS, said investment fund is established for the purpose of trading in the commodities and stock market exclusively, and

WHEREAS, the Investor is desirous of obtaining management services and investment advice from the Managing Agent and said Agent has agreed to render said services and manage the investment fund."

bankruptcy trustee. That adage has some utility, but it does not mean that the substantive provisions of the bankruptcy code are available for use in a non-bankruptcy receivership. The Bankruptcy Code is sui generis. Its specific provisions function within the context of an intricate legislative system of laws designed carefully to meet the policy objectives of the Congress. For example, § 548 of the Bankruptcy Code is a strict liability provision that permits a trustee to avoid transfers made for less than equivalent value within one year preceding the filing of bankruptcy. That power is exercised for the benefit of the creditors of the bankruptcy estate whose claims are filed and allowed according to other statutory requirements. To extract this authority from the Bankruptcy Act, and apply it to recover payments made from three to twelve years earlier for the benefit of any persons to whom distribution may ultimately be ordered in the receivership, would be such an expansion of the law as to be judicial legislation beyond the authority of this court.

The plaintiffs' contention that the defendants were not purchasers for value is both irrelevant and wrong. It is irrelevant to the extent it purports to extend bankruptcy law to this situation. The point is wrong because the value given by the investors was, of course, their contributions and the risk that they may lose all or part of their investment. In retrospect it is obvious that both the risks and the possible returns were high. While the scheme may have been illegal, from an economic perspective there is no doubt that the innocent investors gave value. They did all that was asked of them in the representations which induced their investment.

In *In re Young*, 294 Fed. 1, (4th Cir. 1923), an investor put $4,000 into a Ponzi scheme. Before the debtor declared bankruptcy the investor received $4,796.90. After bankruptcy the investor filed a claim with the court to recover another $2,000 against the bankrupt estate as part of the contractual obligation owed by the debtor. He asserted it was his right to share equally in the distribution of the estate along with other victims who may have received back only a part or none of their investment. The court rejected his claim, holding that under equitable principles the investor who had already received "profits" would not be allowed to share in the distribution of the bankruptcy estate where after its division other investors could only recover a small part of their capital investment. *In re Young* did not allow a receiver for a Ponzi scheme to recover fictitious profits.

*In re Tedlock Cattle Co., Inc.*, 552 F.2d 1351 (9th Cir.1977), did no more than follow *Young* and apply this "equity" theory as a measure for recovery by defrauded "Ponzi" scheme investors. The dispute in *Tedlock* was the method to use in distributing remaining assets of a Ponzi scheme to investors who had suffered losses. *In re Tedlock* did not create a right to recover from "overpaid" investors and, in fact, explicitly stated: "Those who took their 'profits' and got out are not before us." *Id.* at 1352.

The plaintiff seeks to escape the general rule that he stands in the shoes of Chilcott and is subject to all defenses that could have been asserted against the Fund, by stating that a receiver of an insolvent corporation, in the interest of creditors, may disaffirm dealings of the debtor in fraud of their rights. Yet, the plaintiff insists that he is not attempting to assert any claims on behalf of individual investors. Accordingly, the argument must be that the trade creditors were defrauded by making payments to investors according to the representations made to them. But the Fund did not overpay investors to defraud creditors; the payments were made to maintain and perpetuate the Fund.

In short, research has uncovered no case in which a receiver of the defrauding entity has recovered payments to Ponzi scheme investors who received more than their contribution. It must be remembered that the receiver stands in the shoes of Thomas Chilcott and the various Chilcott Funds. To the extent that the Fund seeks recovery on equitable principles, it is difficult to imagine a less deserving entity. There is no equity in permitting an unincorporated

association that perpetrated a massive fraud upon investors to recover money it had paid pursuant to contractual promises. Because the plaintiff is not asserting the claims of individual investors, he cannot raise those investors' equitable considerations.

It is not clear that the Fund was injured by the payments to investors in excess of their capital contributions. The very existence of the Fund depended upon the payment to early investors of amounts that were in reality the contributions of later investors. Without such payments, the Fund could not have continued. The Fund was a fraud, and the existence and continuance of that fraud depended upon the payments the receiver now seeks to recover. It cannot logically be stated that the fund was "injured" by payments that were essential to its existence.

■ The claims for money had and received and injust enrichment fail for similar reasons. To recover for unjust enrichment in Colorado a plaintiff must show "(1) that a benefit was conferred on the defendant by the plaintiff, (2) that the benefit was appreciated by the defendant, and (3) that the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment of its value." *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n,* 649 P.2d 1093, 1097 (Colo. 1982). For the reasons already given, these are not circumstances in which it would be inequitable for the defendants to retain the payments to them. The defendants accepted the money from the Fund in a good faith belief that the Fund was performing its contractual obligations. The Fund as an entity has no justifiable claim on the money it paid investors. Similarly, an action for money had and received, a common law claim based on the principle of unjust enrichment, can be maintained only so long as the money in good conscience belongs to the plaintiff.

Whether investors who lost money have a claim against those who received fictitious profits need not be decided here because those investors are not before the court. In any event, it is not clear that restitution is appropriate between the innocent investors who lost money and innocent investors who obtained fictitious profits. Here, the mistake of all investors was to trust Chilcott. Whether general principles of equity require that completely innocent investors in a Ponzi scheme should be required to share in the losses with, or be divested of "profits" for the benefit of persons whom they have never met or dealt with is not an easy question.

Some investors who received "fictitious profits" may have spent the money on education or other necessities many years ago. What else in equity and good conscience should plaintiffs who received money in good faith pursuant to an "investment contract" have done? In contrast, some investors who lost money may have been speculators who were prepared to lose their investments. There is simply no neat answer to the various equities involved here where the investors never knew each other and were equally at fault for trusting Chilcott. "Unexpected gains or losses by equally innocent parties may present similar problems, not capable of resolution by unjust enrichment principles." Dobbs, *Remedies,* § 4.1 (1973). There is no precedent in law or equity for applying unjust enrichment principles in these circumstances. In such circumstances the courts may simply leave the parties where they were found.

■ As to the claim for conversion, the black letter law is that there can be no action for the conversion of money. 89 C.J.S. *Trover & Conversion,* § 23 (1955), 18 Am.Jur.2d *Conversion* § 10 (1965) ("Hence, where there is no obligation to return identical money, but only a relationship of debtor and creditor, an action for conversion of funds representing the indebtedness will not lie against the debtor"). In the old common law claims, such factual allegations would state an action in assumpsit for money had and received. But even if *Cornelius v. Gerwin and Co.,* 642 P.2d 54 (Colo.App.1982) can be read to create new law, it is inapplicable. Unlike the plaintiffs in *Cornelius,* once the Fund sent

the money to a defendant pursuant to a contract for investment it had no further possessory interest in the money.

The plaintiff has failed to state a claim upon which relief can be granted. Accordingly, it is

ORDERED, that the motion to dismiss under F.R.Civ.P. 12(b)(6) is granted as to all defendants. This civil action is dismissed.