R.A.N. CONSULTANTS, INC., Plaintiff and Counterdefendant-Appellee, v. JAMES PEACOCK *et al.*, d/b/a Peacock & Steen Architects, *et al.*, Defendants and Counterplaintiffs-Appellants.

Third District   No. 3—90—0002

Opinion filed August 10, 1990.

John P. Nicoara and Richard L. Steagall, both of Nicoara & Steagall, of Peoria, for appellants.

Thomas H. Trager, of Vonachen, Cation, Lawless & Slevin, of Peoria, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

The plaintiff, R.A.N. Consultants, Inc., filed suit against the defendants, James Peacock and Thomas Steen, to recover $18,425 for engineering services performed by the plaintiff under a contract assigned to it by R.A. Nack & Associates. The defendants confessed the

validity of the assignment and the correctness of the amount claimed, but filed a counterclaim alleging they were entitled to a setoff for money Nack owed them. The trial court entered judgment against the defendants for $18,425. The defendants appeal.

The record establishes the following facts. The defendants were the sole principals in an architectural design firm in Peoria known as Peacock and Steen Architects. They associated with the engineering firm of R.A. Nack & Associates to form a venture known as Architects Engineers Collaborative (AECO). The purpose of this collaboration was to increase the ability of the defendants and Nack to successfully bid on construction projects. By combining their efforts, they were able to offer both architectural and engineering services to potential clients. If the defendants learned of a project requiring both architectural and engineering services, they would prepare a proposal, obtain a budget from Nack regarding the engineering aspects, and incorporate Nack's figures into a bid which would be submitted under the AECO banner. If the bid was accepted, the defendants, as procurers of the project, would receive the funds paid to AECO and would disburse to Nack the amount budgeted for its services. Similarly, if Nack was the procurer of a project requiring the combined resources of AECO, it would obtain an architectural budget from the defendants, include those figures in an AECO bid, and later disburse the funds from the work to the defendants. Given the ongoing nature of the various AECO projects, Nack would often owe money to the defendants and vice versa. Instead of writing separate checks for their respective debts, Nack and the defendants would generally set off their respective credits and debits.

There are two AECO projects pertinent to this case. The first was a project involving the United States Post Office in Salem, Illinois, which was procured by the defendants in June of 1983. The contract for that project provided that Nack would pay the defendants $29,000 for their services. After the completion of the project, Nack paid the defendants $13,423.29 of the $29,000. The defendants allege that no further payments were made to them for their work on the project, leaving a balance due of $15,576.71.

The second project pertinent to this case involved the City of Peoria public works facility on Dries Lane. That project was procured by the defendants in November of 1983, and the contract provided that the defendants would pay Nack $33,500 for its services.

Prior to 1984, Nack had a satellite office in Peoria, though its main offices and headquarters were in Carbondale. In December of 1983, the individuals comprising the Peoria branch entered into nego-

tiations with Nack to separate from it and establish an independent engineering firm. The negotiations culminated in the formation of the plaintiff company, R.A.N. Consultants, Inc., which was incorporated in early January of 1984. At that time, Nack assigned its interest in AECO's City of Peoria public works facility project to the plaintiff. Thereafter, the plaintiff performed the engineering work on the project. Of the $33,500 due for the work under the contract, the defendants paid the plaintiff only $15,075, leaving a balance of $18,425. The plaintiff submitted all of its transmittals and the bill for the project on AECO stationery.

On September 11, 1985, the plaintiff filed suit against the defendants to recover the $18,425 the defendants owed it pursuant to the contract assigned by Nack. The defendants responded by filing a counterclaim, alleging, *inter alia*, that they were entitled to a setoff of $15,576.71 against the plaintiff's claim because Nack still owed them that amount from the Salem Post Office project.

The above-mentioned evidence was introduced at trial. Further, defendant Peacock testified that he was unaware that Nack had assigned its interest under the contract to the plaintiff until after the plaintiff filed the instant suit. He admitted, however, that he knew in the summer of 1984 that the plaintiff had formed an independent firm.

The trial court entered judgment for the plaintiff, awarding it the $18,425 it requested. The court ruled against the defendants on their counterclaim, finding that they were not entitled to a setoff.

The sole issue presented on appeal is whether the plaintiff's claim was subject to a setoff for the debt the plaintiff's assignor allegedly owed the defendants for the Salem Post Office project. The defendants contend that it was, arguing that section 2—403(a) of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—403(a)) controls the outcome of the instant case. The plaintiff, on the other hand, contends that the outcome is controlled by *Chessen v. Morick* (1930), 260 Ill. App. 1.

Section 2—403(a) of the Code provides that "[t]he assignee and owner of a nonnegotiable chose in action may sue thereon in his *** own name. Such person shall in his *** pleading on oath allege that he *** is the actual bona fide owner thereof, and set forth how and when he *** acquired title. The action is subject to any defense or setoff existing before notice of the assignment." Ill. Rev. Stat. 1989, ch. 110, par. 2—403(a).

In *Chessen*, the defendant entered into a real estate sales contract with O.H. Kramer in which Kramer agreed to pay $7,000 for some

property. $3,000 was to be paid within 30 days and the balance within three years with interest. Kramer paid the first $3,000 within 30 days and then gave Mary R. Hess an assignment of the contract to secure certain notes he had with her. In May of 1926, the defendant loaned Kramer $3,000. At that time, Kramer agreed to repay the loan within one year and in addition agreed to pay the balance on the real estate contract before a deed was required to be delivered. In April of 1928, Hess obtained an absolute assignment of the real estate contract and then assigned it to James H. Chessen. Thereafter, Chessen filed suit against the defendant for specific performance of the real estate contract.

■ The question presented on appeal in *Chessen* was whether the defendant was entitled to withhold the execution and delivery of the deed until he was paid the amount of the $3,000 loan he had made to Kramer. In holding that he was not entitled to withhold delivery of the deed, the *Chessen* court noted that "[t]he general rule of law is that the assignee of a chose in action takes it subject to all equities and defenses between the assignor and the debtor existing at the time of the assignment, but the rule does not extend to a setoff or counterclaim arising out of an independent contract, whether the contract was made before or after notice of the assignment." *Chessen v. Morick* (1930), 260 Ill. App. 1, 4.

The defendants contend that the *Chessen* court never considered the applicability of the predecessor of section 2—403(a). They further argue that *People ex rel. Nelson v. Roseland State Savings Bank* (1935), 282 Ill. App. 289, rejects the reasoning of *Chessen v. Morick* (1930), 260 Ill. App. 1.

■ We disagree with both of the defendants' contentions and find that *Chessen* is dispositive of the instant case. Here, the defendants' counterclaim arose out of an independent contract with a separate entity. Thus, under *Chessen* the defendants were not entitled to a setoff. Regarding the defendants' contention that the *Chessen* court never considered the applicability of the predecessor to section 2—403, we note that the Historical and Practice Notes of the Smith-Hurd Illinois Annotated Statutes indicate that section 2—403(a), although previously section 22 of the Civil Practice Act, and before that section 18 of the Practice Act of 1907, has not changed in substance since 1907. (Ill. Ann. Stat., ch. 110, par. 2—403, Historical and Practice Notes, at 346 (Smith-Hurd 1983).) Though the *Chessen* court did not specifically cite the statute in its opinion, we will presume the court was aware of the law at the time. Regarding *Roseland State Savings Bank*, we find the defendants' reliance on that case misplaced. *Roseland State Sav-*

*ings Bank* dealt with a completely different issue and did not address the *Chessen* decision.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

GORMAN and BARRY, JJ., concur.