Steven S. **SCHOLES**, not individually but solely as Receiver for Michael S. Douglas, D & S Trading Group, Ltd., Analytic Trading Systems, Inc. and Analytic Trading Service, Inc., Plaintiffs,

v.

Twyla **AMES**, et al., Defendants.

No. 91 C 2419.

United States District Court, N.D. Illinois, E.D.

April 12, 1994.

Gary L. Prior, James Raymond Pranger, Mary B. Tribby and Mark Thomas Ostrowski, McDermott, Will & Emery, Chicago, IL, for Steven S. Scholes, not individually but receiver for Michael S. Douglas, D & S Trading Grp., Ltd., Analytic Trading Systems, Inc., Analytic Trading Service, Inc. and Market Systems, Inc.

Abraham Brustein and Christopher Rudolf Smith, Smith, Williams & Lodge, Chicago, IL, for Twyla Ames, J.E. Phillips, Richard W. and Mary Tice.

Joseph Bissing, pro se.

James E. Mahoney, Griffith & Jacobson, Chicago, IL, for Rudy Friesen.

Thomas W. Grant, Yorkville, IL, for Gaile Hogue.

Ann Isselmann, pro se.

Timothy Alan Wolfe and Ted S. Helwig, Katten, Muchin & Zavis, Chicago, IL, for Dennis Kellman.

Kirk Labbs, pro se.

Richard A. Halprin, Chicago, IL, for Charles Levine.

Frank G. Roux, Frank G. Roux, Ltd., Lake Zurich, IL, for Rita Bonde, individually and as Executrix of the Estate of Alfons Bonde.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

At issue in this case is whether an equity receiver for certain defunct entities is entitled to summary judgment on his claims brought on behalf of the entities to recover funds allegedly fraudulently transferred by a principal of the entities to the defendants. Plaintiff Steven S. Scholes brought this Motion for Summary Judgment on Counts I, II, and III of his First Amended Complaint against two remaining defendants, Rudolph Friesen and Joseph C. Phillips. Both have opposed the plaintiff's motion; defendant Friesen has filed a cross-motion for summary judgment. Presently before the court are the parties' Objections, and corresponding Responses, to the Recommendation of Magistrate Judge Pallmeyer to grant in part and deny in part the plaintiff's motion.

Defendant Friesen's Cross–Motion for Summary Judgment was not passed upon in the Report. In his cross-motion, defendant raises one argument in opposition to all three claims of the Receiver—that he sustained a net loss as a result of his investments in the receivership entities. For support, he refers the court to "(1) Affidavit of Rudolph Friesen, (2) Rudolph Friesen's Brief in Opposition to Plaintiff's Motion for Summary Judgment, and (3) Rudolph Friesen's Statement of Additional Facts Requiring Denial of Plaintiff's Motion for Summary Judgment". Defendant's Cross–Motion, at 2. Defendant's argument will be reviewed de novo.

### I. FACTS

The facts in this case are complex and well known to this Court. See SEC v. Douglas, No. 89 C 8407 (N.D.Ill. Nov. 30, 1989) (order appointing a receiver in the lead case brought by the SEC for permanent injunction against Douglas and the entities); Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181 (N.D.Ill.1992) (class plaintiffs' motion for certification in related case); Scholes v. African Enterprise, Inc., 838 F.Supp. 349 (N.D.Ill.1993) (defendants' motion to dismiss in related case). The facts are not materially disputed. Therefore, for the purposes of this motion, we will discuss only those facts which are relevant to this decision.

From August 1987 through November 1989, Michael Douglas operated a bogus investment scheme in which he and others induced investors to purchase limited partnership interests in four entities: D & S Trading Group, Ltd. ("D & S"), Analytic Trading Systems, Inc. ("AT Systems"), Analytic Trading Service, Inc. ("AT Service") and Market Systems, Inc. ("MSI") (hereinafter referred to as the receivership entities). While these entities appeared to the public to be legitimate business operations, they were solely vehicles through which Douglas oper-

ated a classic "Ponzi" scheme. After luring investors into investing their money into these entities, Douglas used this money both to fund his lavish lifestyle and to pay earlier investors what were falsely represented as profits on their investments. Finally, on November 13, 1989, the Securities and Exchange Commission shut down all of Douglas' operations and charged Douglas and the entities with numerous securities law violations. Douglas is now serving a twelve-year prison term for fraud charges arising out of the scheme.

In his Local Rule 12(n) Statement submitted in conjunction with the present motion, defendant Friesen asserts that on May 2, 1988, he made his initial investment of $60,-000 with D & S, upon the recommendation of Joseph Trotti, an insurance agent and financial advisor. (Friesen Affidavit ¶ 2; Friesen's Rule 12(n) Statement ¶ 2.) Friesen understood that he would be a limited partner in D & S and that Michael Douglas would be the general partner. (Friesen Aff. ¶ 4; Friesen's Rule 12(n) Statement ¶ 4.) Friesen never met Douglas, however; throughout the entire transaction, Friesen dealt only with Trotti. (Friesen Aff. ¶ 4; Friesen's Rule 12(n) Statement ¶ 4.) Six months after he made his investment, Friesen withdrew his funds from D & S, recovering both his initial $60,000 investment and an additional payment of $17,115.06, which Friesen reported on his income tax returns and on which he paid the income tax due. (Friesen Aff. ¶ 5; Friesen's Rule 12(n) Statement ¶ 5.)

Nine months later, Friesen communicated to Trotti his desire to invest another $25,000 in D & S. (Friesen Aff. ¶ 6; Friesen's Rule 12(n) Statement ¶ 6.) Trotti informed Friesen that D & S had changed its name to Analytic Trading Systems and that a minimum investment of $100,000 was required to participate. Id. Trotti was willing to combine Friesen's $25,000 investment with other investors' monies to make up the minimum amount necessary. Id. Friesen agreed to this arrangement and delivered a check made payable to Joseph Trotti in the amount of $25,000. (Friesen Aff. ¶ 7; Friesen's Rule 12(n) Statement ¶ 7.) Trotti endorsed the check and made it over to AT Systems by writing "Pay to the order of AT Systems" on the reverse. (Exhibit to Friesen Aff., Friesen Aff. ¶ 8; Friesen's Rule 12(n) Statement ¶ 8.) The check was deposited in AT Systems' account in the Harris Bank. Id. Friesen claims he never recovered the $25,-000 that he gave Trotti for investment in AT Systems. (Friesen Aff. ¶ 10; Friesen's Rule 12(n) Statement ¶ 10.)

As to defendant Joseph E. Phillips, the Receiver enumerates 145 transactions between Phillips and Douglas and/or the receivership entities between November 1987 and April 1989. See Plaintiff's 12(m) Statement, at 9–10 ¶ 21, Exhibit G Attachment 2. In total, the transactions resulted in a net gain to Phillips of $377,133.78. Id. The only asserted conveyance disputed by Phillips is one made on September 8, 1989. Report, at 19 n. 7. The Report properly resolved this dispute in favor of the plaintiff.

By order entered on November 30, 1989, this court appointed Steven S. Scholes as the equitable receiver for Douglas and the investment entities. As Receiver, Scholes is charged with the responsibility of taking possession of and liquidating all choses in action and other property of Douglas and the receivership entities and of pursuing their assets and claims. As part of his responsibility, the Receiver filed this action against a number of individuals who invested funds with Douglas or one of the receivership entities and received payments from Douglas or one of those entities in excess of the amounts invested.

The plaintiff's complaint presents three claims for relief: (1) fraudulent conveyance (Count I); (2) unjust enrichment (Count II); and (3) constructive trust (Count III). The Receiver has moved for summary judgment on all three counts against Friesen and Phillips. In her October 13, 1993, Report and Recommendation ("Report") on the motion, Magistrate Judge Pallmeyer recommended granting plaintiff's motion as to Counts I and II against both defendants and recommended denying the plaintiff's motion as to Count III. *Scholes v. Ames*, No. 91 C 2419 (N.D.Ill. Oct. 13, 1993) (Report and Recommendation of Magistrate Judge Pallmeyer).

Both sides submitted Objections to the Report and Responses to the others' Objections.

## II  *STANDARD OF REVIEW*

■ Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). Only factual disputes that could have an effect on the outcome of the suit should prevent the entry of summary judgment. Factual disputes that are irrelevant or unnecessary have no bearing on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Furthermore, the court must be cognizant of the standard to apply to the recommendation made by the Magistrate Judge in the Report. Pursuant to 28 U.S.C. § 636(b)(1)(C), this court will make a *"de novo* determination of those portions of the report . . . or recommendation to which objection is made" and retains authority to make the final determination. *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986).

### A.  *Unjust Enrichment*

The plaintiff alleges that allowing the defendants to retain purported profits constitutes unjust enrichment. In Magistrate Judge Pallmeyer's Report, she recommended granting the plaintiff's motion for summary judgment as to this count regarding both defendants. Report, at 18, 26. For the following reasons, we sustain the defendants' objections and deny the plaintiff's motion.

■ To prevail on a cause of action in Illinois based on a theory of unjust enrichment, a plaintiff must prove that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the principles of justice, equality, and good conscience. *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672 (1989). The Magistrate Judge found no evidence from the defendants to counter the plaintiff's assertion that defendants' receipt of the fictitious profits were windfall payments that in equity should be returned to the receivership entities for distribution to investors who lost their money. Report, at 26. Defendant Friesen made no objection to the Magistrate Judge's recommendation. Meanwhile, Defendant Phillips argued that: (1) unjust enrichment is not an independent cause of action; (2) the Receiver has not shown that Phillips' retention of the amounts in excess of his investment violates the principles of justice, equality, and good conscience; and (3) the Receiver does not have standing to bring the unjust enrichment claim. The court considers these objections in turn.

■ First, the objection regarding standing is overruled. Phillips' argument that the Receiver lacks standing to raise these claims has been addressed by this court. In a related case, *Scholes v. African Enterprise, Inc.*, 838 F.Supp. 349 (N.D.Ill. 1993), this court held that the Receiver does have standing to bring such claims. In that case, the court explained that "(a)t the core of the standing doctrine is the requirement that a plaintiff 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief'." *Id.* at p. 352 (citing *County of Riverside v. McLaughlin,* 500 U.S. 44, 51, 111 S.Ct. 1661, 1667, 114 L.Ed.2d 49 (1991)). This court found that the receivership entities sustained direct, personal injuries as a result of Douglas' fraud and that, therefore, the Receiver is the proper party to bring such claims. The court further determined that the Illinois fraudulent conveyance statute expressly recognized the Receiver as a proper plaintiff. *See* ILL.REV.STAT. Ch. 59, p. 4 (1987) (repealed by P.A. 86–814, § 13, effective January 1, 1990) ("Every gift [or] conveyance . . . made with intent to . . . defraud creditors or other persons . . . shall be void as against such creditors, purchasers and other persons."). Therefore, the court overrules the defendant's objection. The Receiver possesses standing to bring this claim.

■ Second, unjust enrichment can be pleaded as a separate cause of action in Illinois. This court also decided this issue in

*African Enterprise.* 838 F.Supp. at 357. In that case, we pointed to *HPI Health Care Services, Inc.,* 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672, where the Illinois Supreme Court set out the elements as stated above. *African Enterprise, Inc.,* 838 F.Supp. at 353. This objection, therefore, is also overruled.

█ Finally, defendant Phillips objects that the Receiver failed to prove that the defendants were unjustly enriched. Magistrate Judge Pallmeyer rejected the defendant's argument, holding that the purported profits were windfall payments that, equitably, should be returned. The weighing of the equities in this case requires a precise scale.

The basic premise of the Receiver's claim is that fairness requires a redistribution of the effects of Michael Douglas' fraudulent scheme by recovering from those who received more than their investments and paying those who participated in the fraudulent investment schemes. However, to decide this question of fairness, the court must keep in mind who the parties represent. The Receiver does not assert the rights or claims of any investors. Rather, the plaintiff stands in the shoes of Michael Douglas and the various receivership entities. So, when asserting his equity claim, the Receiver cannot personally raise those equitable considerations of the later investors that lost their money. *See Johnson v. Studholme,* 619 F.Supp. 1347, 1350 (D.Colo.1985), *aff'd,* 833 F.2d 908 (10th Cir.1987). The entities were established by Douglas solely to perpetrate fraud. Thus, as the court in *Johnson* stated in regard to a similar claim, to the extent the Receiver seeks recovery in equity on behalf of Douglas and the entities, "it is difficult to imagine a less deserving entity." *Id.* at 1349. On the other hand, Douglas misappropriated partnership funds directly from the entities, and the entities were thereby injured.

At the same time, the defendants were innocent investors who accepted their payments as legitimate returns on their investments. Plaintiff has made no allegation that the defendants committed fraud or participated in the Ponzi scheme. In fact, defendant Friesen reported his receipt of the conveyances as income on his federal tax returns. Defendant Friesen's Rule 12(n)

Statement, at 2 ¶ 5. The evidence therefore supports the proposition that the defendants received these conveyances in good faith and justifiably relied on the benefits of the conveyances.

As a result, this court finds it impossible to grant summary judgment to the Receiver, on behalf of the entities, on equitable grounds. Whether the later investors have a claim against the prior investors who received more than their investments need not be decided here because those investors are not before the court. However, in this case, the Receiver, on behalf of Michael Douglas and the receivership entities, hopes to recover from the defendants those payments that the Ponzi scheme depended upon in order to continue and that the defendants took in good faith and personally relied upon. The Receiver has not shown that this scenario unequivocally represents unjust enrichment as expressed by Illinois courts. This is especially true in regard to defendant Friesen who ultimately caused more money to be invested with Douglas than he received, although due to the formalities of such investments they cannot be held to constitute a net loss. Therefore, defendants' objections are sustained and plaintiff's motion for summary judgment on Count II is denied as to both defendants.

### B. *Constructive Trust*

█ The plaintiff also moves for summary judgment on his claim for constructive trust. In her Report, the Magistrate Judge recommended dismissing this claim, first stating that "a constructive trust is an equitable remedy for unjust enrichment, rather than an independent cause of action," Report, at 11, and then suggesting that a constructive trust may not be imposed unless the defendant has participated in knowing wrongdoing. Report, at 12 n. 4.

In two related cases, *Scholes v. Lehmann,* No. 90 C 3828 (N.D.Ill. December 7, 1993) and *Scholes v. African Enterprise, Inc.,* 838 F.Supp. 349 (N.D.Ill.1993), this court recently decided this issue. The court agrees with the Magistrate Judge's first assertion and therefore denies the plaintiff's motion as to

Count III. As this court held in *Lehmann* and *African Enterprise*, constructive trust is not an independent cause of action; rather, it's an equitable remedy. *See A.T. Kearney, Inc. v. INCA Int'l, Inc.*, 132 Ill.App.3d 655, 660, 87 Ill.Dec. 798, 803–04, 477 N.E.2d 1326, 1331–32 (1st Dist.1985) ("A constructive trust will be used where the person holding the property would be unjustly enriched if he were permitted to retain such property.").

### C. *Fraudulent Conveyance*

Lastly, the plaintiff seeks summary judgment on his cause of action for fraudulent conveyance. Magistrate Judge Pallmeyer recommended granting the plaintiff's motion for summary judgment as to this count against both defendants. Report, at 28. For the reasons articulated below, this court overrules the defendants' objections, accepts the recommendation of the Report and grants the plaintiff's motion on this count.

Under Illinois law, the elements of a cause of action for conveyance fraudulent in law [1] are "(1) a voluntary gift; (2) an existing or contemplated indebtedness; and (3) failure of the debtor to retain sufficient assets to pay the indebtedness." *Indiana National Bank v. Gamble*, 612 F.Supp. 1272, 1276 (N.D.Ill. 1984). As noted, Magistrate Judge Pallmeyer agreed that the plaintiff's claim established all three elements. In his Objection to the Magistrate Judge's Report, defendant Friesen argued that he never retained the benefits of the $17,115.06 that he received in excess of his original investment. Since he subsequently invested an additional $25,000 in the entities through his broker, Friesen argued that he should be entitled to offset his subsequent loss against the "temporary" profits which the plaintiff seeks to recover. Meanwhile, defendant Phillips made two objections to the Receiver's claim. First, Phillips averred that the plaintiff lacks standing to bring the claim. Second, he argued that the plaintiff failed to prove that the transfers were voluntary gifts. The court considers these objections in turn.

Defendant Friesen argued that he was entitled to set off any gains that he made on his investment with the loss he incurred in a related yet independent transaction because he never retained the benefits of the gains he made from his original investment. In her Report, Magistrate Judge Pallmeyer rejected the defendant's argument, holding that a claim arising out of an independent transaction with one party may not be used as a set-off against another independent claim, even if the transaction is related to the claim in dispute. Report, at 15–16. We agree with the Magistrate Judge's analysis.

In connection with Friesen's first investment with D & S Trading Group, Ltd., he received from Douglas, as "profit", $17,115.06 in excess of his investment. He reported this on his income tax return and paid the income tax due. The next year, Friesen made an investment in AT Systems through his broker. His $25,000 investment represented one-fourth of the broker's $100,000 investment. The broker made the investment in his own name. The Report concluded that the two investments were distinct and made under separate names and, thus, Friesen was not entitled to set off the purported profit from the first investment by the loss in the second. Report, at 13–18. Friesen objected to this finding by re-asserting his arguments made in response to the Receiver's motion. Friesen's arguments fail.

First, Friesen has failed to even acknowledge the case law cited in the Report. *See* Report, at 15–16 (analyzing *R.A.N. Consultants, Inc. v. Peacock*, 201 Ill.App.3d 67, 70, 147 Ill.Dec. 283, 285, 559 N.E.2d 283, 285 (3d Dist.1990); *KFK Corp. v. American Continental Homes, Inc.*, 71 Ill.App.3d 304, 315, 27 Ill.Dec. 420, 427, 389 N.E.2d 232, 239 (2d Dist.1979)). Based on this analogous case law, we believe the Report reaches the correct conclusion. Second, Friesen fails to re-

---

1. Illinois law distinguishes between conveyances that are "fraudulent in law," and those that are "fraudulent in fact." Conveyances are "fraudulent in fact" where consideration does exist for the transfer, but an actual intent to defraud exists on the part of the debtor, and the transferee willingly participates in the fraud. *Reagan v. Baird,* 140 Ill.App.3d 58, 65, 94 Ill.Dec. 151, 157, 487 N.E.2d 1028, 1034 (4th Dist.1985). Plaintiff in this case makes no claim for a conveyance "fraudulent in fact."

but the Magistrate Judge's determination that allowing set-off in this case would allow for double recovery because the broker, in a related case, has also made a claim to recover the $100,000 investment under his name. As such, the court agrees with the conclusion of the Report and overrules this objection.

Defendant Phillips first objects to this claim in the Report by arguing that the Receiver lacked standing to raise the claims stated in his complaint. This objection is overruled as stated above in regard to the unjust enrichment claim. *See African Enterprise,* 838 F.Supp. at 352.

Defendant Phillips next argues that the plaintiff failed to satisfy the first element of a fraudulent conveyance claim—that the transfers were voluntary gifts. In her Report, Magistrate Judge Pallmeyer rejected the defendant's argument that, through his investment of money, he gave value for the transfers from Douglas. Report, at 20–21. Magistrate Judge Pallmeyer found that by demonstrating that Douglas engaged in an enormous securities fraud and that the trading activities associated with that securities fraud resulted in massive losses amounting to millions of dollars, the Receiver had made a showing sufficient to shift to the defendants the burden of showing with persuasive evidence that the transactions in which he was involved were, in fact, profitable. *Id.* By not offering any credible evidence that any of his transactions with Douglas or the investment entities were ever profitable, the Magistrate Judge found that defendant had not met this burden. *Id.*

In reaching this conclusion, the Magistrate Judge relied on *In re Independent Clearing House Co.,* 77 B.R. 843 (D.Utah 1987). In her Report, the Magistrate Judge stated that *Independent Clearing House* stands for the proposition that, as a matter of law, no consideration exists for the transfer of purported profits under a Ponzi scheme. *Id.* at 23 (citing *Independent Clearing House,* 77 B.R. at 859). We agree with the conclusion of the Report, but resist the temptation to rely on *Independent Clearing House.*

*Independent Clearing House* is inapposite. That case similarly arose out of the collapse of an alleged Ponzi scheme. In that case,

however, the plaintiff was a bankruptcy trustee appointed by the Bankruptcy Court to pursue all claims of three debtor entities. Pursuant to his duties, the trustee filed a complaint against a number of investors who received payments from the debtor entities within one year of the debtors' filing their bankruptcy petition, either as "earnings" or repayment of principal or both. The trustee's complaint asserted four claims for relief, each of which relied on various provisions of the Bankruptcy Code—which gives the trustee powers to avoid certain transfers by the debtor. 11 U.S.C. § 101 *et seq.* Pursuant to 11 U.S.C. § 548(a)(2), a conveyance made within one year of the bankruptcy filing date may be avoided if the transferor was insolvent (or became insolvent due to the transfer) and received "less than a reasonably equivalent value" in exchange for the transfer. However, whether a party has given "reasonably equivalent value" is determined within the confines of bankruptcy law. 11 U.S.C. §§ 548(a)(2)(A), 548(d)(2)(A). In *Independent Clearing House,* the court concluded that, for purposes of § 548(a)(2), the entities did not receive a "reasonably equivalent value" from their investors. Because the holding was based on the bankruptcy statutes, however, it does not follow that, in all contexts as a matter of law, no consideration exists for the transfer of "profits" under a Ponzi scheme.

*Johnson v. Studholme,* 619 F.Supp. 1347 (D.Colo.1985), is more analogous. *Johnson* also arose out of a Ponzi scheme that was uncovered by the authorities. In that case, Johnson was appointed the equitable receiver for a number of defunct entities and charged with taking control of all of the properties and interests and exercising all the rights and powers of those entities in that case. As the receiver, he brought actions against all those investors who received amounts in excess of their contributions and relied upon *Independent Clearing House* as his authority. The *Johnson* court dealt with *Independent Clearing House* in this way:

> The decision rests solely upon the application of federal bankruptcy law and does not purport to create any equitable right of action. The plaintiff argues that an equity

receiver has the powers of a bankruptcy trustee. That adage has some utility, but it does not mean that the substantive provisions of the bankruptcy code are available for use in a non-bankruptcy receivership. The Bankruptcy Code is *sui generis.* Its specific provisions function within the context of an intricate legislative system of laws designed carefully to meet the policy objectives of the Congress. For example, § 548 of the Bankruptcy Code is a strict liability provision that permits a trustee to avoid transfers made for less than equivalent value within one year preceding the filing of bankruptcy. That power is exercised for the benefit of the creditors of the bankruptcy estate whose claims are filed and allowed according to other statutory requirements. To extract this authority from the Bankruptcy Act, and apply it to recover payments made from three to twelve years earlier for the benefit of any persons to whom distribution may ultimately be ordered in the receivership, would be such an expansion of the law as to be judicial legislation beyond the authority of this court.

*Johnson,* 619 F.Supp. at 1349. The *Johnson* court then determined that the investors gave value for the profits they received and, thus, did not receive fraudulent conveyances. *Id.* at 1349. The court held that the capital contributions made by the investors and the risk that they could lose all or part of their investments was their contribution. *Id.*

The same reasoning applies in this case to the principal investments made by the defendants. We decline, however, to follow such reasoning as to the purported profits. The defendants here were good faith investors. Through their investments, the defendants entered into a contractual relationship with the limited partnerships. In doing so, they gave cash to the investment partnerships and took a risk that the investment would be lost. They subsequently received their payments with nothing less than a good faith belief that it was a legitimate return on their investments. As such, defendants gave equivalent value for the principal investment returned to them by Douglas. As to the payments from Douglas in excess of the principal invested, however, this does not hold true.

Conveyances by Douglas to the defendants of cash in excess of the amounts invested were voluntary gifts. No duty or obligation existed for theses conveyances. No value was given for these conveyances by the defendants. Douglas, having made no profitable investments and in order to continue the profit-making look and feel of his phony investment schemes, gave these defendants what he claimed were profits on their investments. Defendants point to nothing which would require Douglas to convey any purported profits. Defendants point to nothing that can be construed as a *quid pro quo* for the purported profits. There can be only one rational conclusion to this scenario—that any assets conveyed by Douglas to the defendants in excess of the principal invested constituted voluntary gifts.

We decline to follow the *Johnson* rationale insofar as it holds that recipients of Ponzi profits are "purchasers for value". *See Johnson,* 619 F.Supp. at 1349. This court cannot conclude that "the value given by the investors [for the purported profits] was ... their contributions and the risk that they may lose all or part of their investment". *Id.* That, indeed, may have been the consideration given for their contractual ownership of their limited partnership interests. When the partnerships failed to turn a legitimate profit, however, nothing was owed the defendants. In fact, in order to pay a profit to any investor, Douglas, as perpetrator of the Ponzi schemes, had to take it from other, good faith investors. It is difficult to see how the defendants' original investments could be considered "value given" for these illicitly obtained funds. We therefore hold that the amounts the Receiver asserts these defendants received from Douglas and the receivership entities in excess of their respective investments constituted fraudulent conveyances. Consequently, the Receiver's motion for summary judgment on Count I is granted as to both defendants. Defendant Friesen's cross-motion for summary judgment is denied.

### D. *Prejudgment Interest*

Finally, the Receiver objects to the sound recommendation of the Magistrate Judge that prejudgment interest be denied. Report, at 28. The court agrees with the analysis and conclusion to deny prejudgment interest as stated in the Report and overrules this objection. Plaintiff's request for prejudgment interest is denied.

### CONCLUSION

Plaintiff's motion for summary judgment as to Counts II and III of his First Amended Complaint is denied. Plaintiff's motion for summary judgment on Count I of his Complaint is granted. Defendant Friesen's Cross–Motion for Summary Judgment is denied. Judgment is entered in favor of Steven S. Scholes, as Receiver for Michael S. Douglas, D & S Trading Group, Ltd., Analytic Trading Service, Inc., Analytic Trading Systems, Inc. and Market Systems, Inc. and against defendant Joseph E. Phillips in the amount of $377,133.78. Judgment is entered in favor of Steven S. Scholes, as Receiver for Michael S. Douglas, D & S Trading Group, Ltd., Analytic Trading Service, Inc., Analytic Trading Systems, Inc., and Market Systems, Inc., and against defendant Rudolph Friesen in the amount of $17,115.06.